454 P.2d 63

Cloyd DOGGETT, Plaintiff-Appellant,

v.

ELECTRONICS CORP. OF AMERICA, COMBUSTION CONTROL DIVISION, a Corp., and Optimum Controls Corp., a Corporation, Defendants-Respondents,

and

Boiler Engineering & Supply Co., Inc., Bradley Boiler Co., a Corp., Controls & Instruments Division of International Telephone and Telegraph Corporation, a Corporation, Edward Liversidge and James F. Williams, Defendants.

No. 10179.

Supreme Court of Idaho.

May 7, 1969.

Church, Church & Snow, Burley, for appellant.

Merrill & Merrill, Pocatello, and Schwartz & Doerr, Twin Falls, for respondents.

SPEAR, Justice.

Since the respondents have conceded the other issues on this appeal, we are left with the identical facts, issues and law ruled on by the Illinois Supreme Court in the case of Gray v. American Radiator & Standard Sanitary Corporation, 22 Ill.2d 432, 176 N.E.2d 761 (1961). We reach the same conclusion as the Illinois Supreme Court.

The case at hand arises out of the purchase of an industrial steam boiler by Burley Processing Company of Burley, Idaho. The boiler was sold by defendant manufacturers Boiler Engineering & Supply Co. and Bradley Boiler Co., hereinafter referred to collectively as "Manufacturers."

The boiler exploded during installation and the plaintiff Cloyd Doggett, an employee of Bradley, was severely injured.

Cause of the explosion has allegedly been traced to two component parts, each manufactured by separate companies and sold by "Manufacturer" as part of one complete unit. Electronics Corporation of America (Electronics) manufactured the component described as a "fire eye control" designed to monitor flame in burners. Optimum Controls Corp. (Optimum) manufactured a metering system designed to modulate the flow of fuel and combustion air to industrial burners. It is plaintiff's contention that the failure of either one or both of these components caused his injuries.

Alleging causes of action sounding in tort and breach of warranty, plaintiff sued "Manufacturer," Electronics, Optimum and two of "Manufacturer's" representatives who were installing the boiler at the time of the explosion.

The trial court, after reviewing affidavits and interrogatories submitted by both sides, found that neither Optimum nor Electronics had established the necessary minimal contacts to constitute either doing business [I.C. § 5–514(a)] or the commission of a tort [I.C. § 5–514(b)] within the State of Idaho. The court therefore concluded that Idaho did not have jurisdiction over Optimum and Electronics and granted the motions made by them to quash service of summons.

Appellant has assigned error in the trial court's failure to find jurisdiction based on I.C. § 5–514(b). As in the *Gray* case, the issues presented are: (1) Was a "tortious act" committed in Idaho within the meaning of I.C. § 5–514(b); and (2) If so, will the assertion of jurisdiction against respondents amount to a denial of due process?

As to the issue of whether a tort was committed in Idaho, respondents contend, and the trial court ruled, that the negligent act, as well as the injury, must occur in Idaho. The argument is made that to require only the injury to occur in Idaho would do violence to the language of the statute and in effect make the words "tortious act" read "commission of a tort in whole or in part." With this argument we cannot agree. For the purpose of determining the state with jurisdiction as well as the substantive law which will govern, the state where the injury occurred and the cause of action thus accrued is generally the most logical state for adjustment of rights. This is particularly true where, as here, there are residents of at least four different states involved. The Illinois court's reasoning on this issue is most persuasive:

"To be tortious an act must cause injury. The concept of injury is an inseparable part of the phrase. In determining legislative intention courts will read words in their ordinary and popularly understood sense. [citations] We think the intent should be determined less from technicalities of definition than from considerations of general purpose and effect. To adopt the criteria urged by defendant would tend to promote litigation over extraneous issues concerning the elements of a tort and the territorial incidence of each, whereas the test should be concerned more with those substantial elements of convenience and justice presumably contemplated by the legislature." 176 N.E.2d 761 at page 763.

■ The result we reach is virtually compelled by the fact that our statute [1]

1. "5–514. Acts subjecting persons to jurisdiction of courts of state.—Any person, firm, company, association or corporation, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits said person, firm, company, association or corporation, and if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:
(a) The transaction of any business within this state which is hereby defined as the doing of any act for the purpose of realizing pecuniary benefit or accomplishing or attempting to accomplish, transact or enhance the business purpose or objective or any part there-

was based on the Illinois Act[2]. B. B. P. Association, Inc. v. Cessna Aircraft Company, 91 Idaho 259, 264, 420 P.2d 134 (1966). Even prior to the *Gray* case, the Illinois supreme court had held that the commission of an isolated tort was sufficient for Illinois courts to assert jurisdiction over non-resident defendants. Nelson v. Miller, 11 Ill.2d 378, 143 N.E.2d 673 (1957). We must assume the legislature of the State of Idaho was cognizant of the reasonable interpretations of the Illinois statute by the highest court in Illinois and intended our interpretations to be in accord therewith. Lawrence Warehouse Co. v. Rudio Lumber Co., 89 Idaho 389, 405 P.2d 634 (1965); Johnson v. Casper, 75 Idaho 256, 270 P.2d 1012 (1954); Services,

Inc. v. Neill, 73 Idaho 330, 252 P.2d 190 (1953).

We are not persuaded to adopt the distinction made by some courts, such as the New York Court of Appeals in Feathers v. McLucas, discussed at page 76 of the case of Longines-Wittnauer W. Co. v. Barnes & Reinecke, Inc., 15 N.Y.2d 443, 261 N.Y.S. 2d 8, 209 N.E.2d 68 (1965). *Feathers* construed the New York statute as it then existed[3], to require both the negligent act and the injury to occur in New York. Such an interpretation obviously did violence to the legislative intent, since the New York legislature promptly amended its statute to reach the result obtained in the Illinois case.[4]

of such person, firm, company, association or corporation;
(b) The commission of a tortious act within this state;
(c) The ownership, use or possession of any real property situate within this state;
(d) Contracting to insure any person, property or risk located within this state at the time of contracting."

2. 110. "§ 17. Act submitting to jurisdiction—Process. (1) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:
(a) The transaction of any business within this State;
(b) The commission of a tortious act within this State;
(c) The ownership, use, or possession of any real estate situated in this State;
(d) Contracting to insure any person, property or risk located within this State at the time of contracting; * * *."

3. "§ 302. Personal jurisdiction by acts of non-domiciliaries (a) Acts which are the basis of jurisdiction. A court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, as to a cause of action arising from any of the acts enumerated in this section, in the same manner as if he were a domiciliary of the state, if, in person or through an agent, he:

1. transacts any business within the state; or
2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
3. owns, uses or possesses any real property situated within the state."

4. "302. Personal jurisdiction by acts of non-domiciliaries (a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
1. transacts any business within the state; or
2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
3. commits a tortious act without the state causing injury to person or property within the State, except as to a cause of action for defamation of character arising from the act, if he
(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or
4. owns, uses or possesses any real property situated within the state."

30

Finally, we are not persuaded to construe our statute as narrowly as respondent would have us do, in view of the nature of the statute here involved. I.C. §§ 5–514 through 5–517 are designed to provide a forum for Idaho residents. As such, the law is remedial legislation of the most fundamental nature. It, therefore, is to be liberally construed. B. B. P. Association, Inc. v. Cessna Aircraft Company, supra. Under the circumstances we believe that the legislature, in adopting I.C. §§ 5–514 through 5–517, intended to exercise all the jurisdiction available to the State of Idaho under the due process clause of the United States Constitution. Again, it must be borne in mind that our state legislature is presumed to have known the reasonable interpretations of the statutes it adopts. State v. Taylor, 59 Idaho 724, 87 P.2d 454 (1939). Prior to the enactment of our statute the Illinois Supreme Court had already declared that their statute exercised the full authority available under the due process clause. Nelson v. Miller, 11 Ill.2d 378, 143 N.E.2d 673, 679 (1957).

Respondents contend that due process is violated if Idaho courts assert jurisdiction over them. Here again, however, the issue is well disposed of by Gray. As in Gray, respondents' only contact with our state consisted of a product manufactured in one state, incorporated into the finished product in another state which in the regular course of business was sold to a consumer in the forum state. The supreme court of Illinois found no violation of American Radiator's right to due process and we, likewise, are not disposed to find a violation of the rights of "Optimum" and "Electronics."

Respondents, however, contend that the isolated contact they have with Idaho is not sufficient to meet the standards of due process. On that basis they argue Gray is distinguishable because the court there assumed a substantial transaction of business in Illinois. Gray, 176 N.E.2d at p. 766. Respondents cite several cases to sustain their position, such as Mueller v. Steelcase, Inc., 172 F.Supp. 416 (D.Minn.1959); Mann v. Equitable Gas Company, 209 F.

Supp. 571 (N.D.W.Va.1962); and DiMeo v. Minster Machine Co., 225 F.Supp. 569 (D.Conn.1963).

Although we do not consider the point which respondents attempt to distinguish as the ratio decidendi of the Gray case, we do consider helpful an independent review of those precedents which bind this court.

In International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the court held, at page 318 of 326 U.S., at page 159 of 66 S.Ct.:

"* * * the commission of some single or occasional acts * * * because of their nature and quality and the circumstances of their commission, may be deemed sufficient to render the corporation liable to suit. * * *"

In McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), the court quoted from *International Shoe,* supra, as follows:

"[D]ue process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" 355 U.S. at p. 222, 78 S.Ct. at p. 201.

Mr. Justice Black, author of the *McGee* decision, then discussed why California had jurisdiction:

"* * * we think it apparent that the Due Process Clause did not preclude the California court from entering a judgment binding on respondent. It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State. [citations] The contract was delivered in California, the premiums were mailed from there and the insured was a resident of that State when he died. It cannot be denied that California has a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims.

These residents would be at a severe disadvantage if they were forced to follow the insurance company to a distant State in order to hold it legally accountable. When claims were small or moderate individual claimants frequently could not afford the cost of bringing an action in a foreign forum—thus in effect making the company judgment proof. Often the crucial witnesses—as here on the company's defense of suicide—will be found in the insured's locality. Of course there may be inconvenience to the insurer if it is held amenable to suit in California where it had this contract but certainly nothing which amounts to a denial of due process." 355 U.S. at pp. 223–224, 78 S.Ct. at p. 201.

However, in Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), some cautionary notes were added:

"[I]t is a mistake to assume that this trend [to a more flexible standard of jurisdiction] heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. [citation] Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him." 357 U.S. at p. 251, 78 S.Ct. at p. 1238.

In Hanson v. Denckla the court concluded that jurisdiction did not exist, and observed:

"The cause of action in this case is not one that arises out of an act done or transaction consummated in the forum State. In that respect, it differs from McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 201, 2 L.Ed. 2d 223, and the cases there cited. * * * In contrast, this action involves the validity of an agreement that was entered without any connection with the forum State." 357 U.S. at pp. 251–252, 78 S.Ct. at p. 1238.

Finally, the court stated:

"The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." 357 U.S. at p. 253, 78 S.Ct. at p. 1239.

■■ In summarizing these statements, then, we make the following observations:

(1) The limits of due process are not just guarantees against inconvenient litigation, but are, as always, a limitation on the power of the state.

(2) However, in view of modern conditions, the exercise of *in personam* jurisdiction is to be liberally construed.

(3) Therefore, one single act or transaction may be sufficient for jurisdiction.

(4) Provided, however, that the single act or transaction is not solely that of the resident party.

(5) Provided further, that to hold a non-resident defendant accountable would not offend traditional notions of fair play and substantial justice.

■■ On the basis of the United States Supreme Court cases, we conclude that under these circumstances the one contact with Idaho, resulting as it did in injury to an Idaho resident, was sufficient to give Idaho jurisdiction over the respondents in a tort action. In placing their goods in the flow of interstate commerce, the respondents must have had the reasonable expectation that such items would be shipped indiscriminately throughout the United States. If dangerously defective goods are placed in the interstate flow of commerce,

those whose negligence created the defect should be prepared to defend themselves wherever injury should occur.

■ A final cautionary note must be added. In oral argument, appellant argued that if Idaho had jurisdiction over a defendant on the basis of a tortious act committed in Idaho, this state would have jurisdiction over all claims a plaintiff had against the defendant. This argument overlooks the impact of I.C. § 5–516.[5] Jurisdiction acquired on the basis of a tort cannot be utilized to settle all differences between the parties. Each cause of action must stand or fall on its own jurisdictional merits.

Judgment reversed and cause remanded for further proceedings consistent with this opinion. Costs to appellant.

McQUADE, DONALDSON and SHEPARD, JJ., and DURTSCHI, D. J., concur.

---

5. "5–516. Limitation on causes of action.—Only causes of action arising from acts enumerated herein may be assert-

ed against a defendant in an action in which jurisdiction over such defendant is based upon this section."