657 P.2d 1078

Nancy SCHNEIDER, Individually and as Executrix of the Estate of Robert D. Schneider, Deceased, Plaintiffs-Appellants,

v.

SVERDSTEN LOGGING COMPANY, INC., an Idaho Corporation, The Estate of Gerald Vaughn Blackbird, Summa Corp., Hughes Helicopter Division of Summa Corp., Cambria Land Corp., Keystone Helicopter Corp., Buehl Performance Products and Limerick Aviation, Defendants,

Cambria Land Corp. and Keystone Helicopter Corp., Defendants-Respondents.

No. 14322.

Supreme Court of Idaho.

Jan. 28, 1983.

William F. Sims, Coeur d'Alene, Mark Conlin and Wm. Fremming Nielsen, Spokane, Wash., for plaintiffs-appellants.

William J. Russell, Boise, for Keystone Helicopter Corp.

Scott W. Reed, Coeur d'Alene, for Cambria Land Corp.

SCOGGIN, Justice Pro Tem.

This appeal is taken from a trial court order granting motions to quash service and to dismiss for lack of in personam jurisdiction made by defendants Cambria Land Corporation (Cambria) and Keystone Helicopter Corporation (Keystone). We affirm.

On May 21, 1979, a helicopter accident occurred in the State of Idaho. Plaintiff-appellant, Nancy Schneider, an Idaho resident, is the surviving spouse and executrix of the estate of Robert D. Schneider, a passenger in the helicopter who was killed as a result of the accident. Plaintiff instituted this wrongful death action against, among others, Cambria and Keystone alleging that defendants were negligent in the design, manufacture, repair, maintenance, inspection and operation of the helicopter, which negligence was the proximate cause of the death of Mr. Schneider. Cambria and Keystone moved the district court to dismiss the complaint as to them, or, in the alternative, to quash service of process, on the ground that the court lacked in personam jurisdiction over them.

In support of the motion filed by Keystone, an affidavit was filed by Keystone's secretary-treasurer which stated that Keystone is a Pennsylvania corporation which does business in Pennsylvania, has never done business in Idaho, has never had any customers from Idaho, nor any property in Idaho, and has no agents or salespersons in Idaho. The affidavit further stated that Keystone's sole contact with the helicopter in question took place in Pennsylvania during the years from 1975 through 1978 when the helicopter was owned by Cambria. Keystone performed maintenance on the helicopter until such time as Cambria sold it.

Cambria supported its motion with an affidavit from its comptroller which stated that Cambria is a Pennsylvania corporation having its principal place of business in Pennsylvania. It further stated that Cambria purchased the helicopter from Keystone in December of 1974 and that on April 19, 1979, Cambria sold the helicopter to Limerick Aviation, which paid for it on May 11, 1979, and that Cambria has had no contact with the helicopter since that time. The affidavit further stated that all contacts that Cambria had with the helicopter in question occurred in the State of Pennsylvania.

Plaintiff filed two affidavits by her attorney, Mr. Mark J. Conlin, in response to defendants' motions to dismiss or quash service. One such affidavit included a copy of a Keystone advertisement from a magazine called "Professional Pilot," which is a magazine of national circulation. The advertisement shows that Keystone operates offices in West Chester, Pennsylvania; Tucson, Arizona; and Miami, Florida. The second affidavit stated that Mr. Conlin had reviewed an "aircraft bill of sale" as provided by the FAA concerning the helicopter in question which showed that the aircraft was still registered to Cambria at the time of the accident.

■ In order for jurisdiction to be obtained over an out-of-state defendant, two criteria must be met. First, the act giving rise to the cause of action must fall within the scope of our long-arm statute. Second, the constitutional standards of due process must be met. *Duignan v. A.H. Robins Co.,* 98 Idaho 134, 559 P.2d 750 (1977); *Doggett v. Electronics Corporation of America,* 93 Idaho 26, 454 P.2d 63 (1969).

Plaintiff obtained service of process on Cambria and Keystone pursuant to the provisions of I.C. § 5–514 which provides in pertinent part:

"Acts subjecting persons to jurisdiction of courts of state.—Any person, firm, company, association or corporation, whether or not a citizen or resident of this state, who in person or through an agent does

any of the acts hereinafter enumerated, thereby submits said person, firm, company, association or corporation, and if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of said acts: ...

"(b) the commission of a tortious act within this state; .... "

It is a well-settled principle of law that the fact that an injury has occurred in the State of Idaho in an allegedly tortious manner is sufficient to invoke the "tortious act" language of I.C. § 5–514(b). *Duignan, supra; Doggett, supra.* Even if we assume that plaintiffs' complaint and moving documents allege acts which fall within the scope of our state long-arm statute, we nevertheless conclude that the exercise of jurisdiction by our courts would violate defendants' right to due process. Accordingly, we affirm.

■ Due process prohibits the exercise of in personam jurisdiction over a nonresident defendant unless the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)). "[The due process] clause does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations." 326 U.S. at 319, 66 S.Ct. at 160. "[Due process] restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States." *Hanson v. Denckla,* 357 U.S. 235, 251, 78 S.Ct. 1228, 1238, 2 L.Ed.2d 1283 (1958). It has been long held that before a state can exercise jurisdiction a non-resident defendant must "purposefully [avail] itself of the privilege of conducting activities in the forum State, thus invoking the benefits and protections of its laws." *Id.* at 253, 78 S.Ct. at 1239–40. *See Intermoun-*

*tain Business Forms, Inc. v. Shepard Business Forms Co.,* 96 Idaho 538, 531 P.2d 1183 (1975).

The "minimum contacts" standard has been further defined by the United States Supreme Court in *World-Wide Volkswagon Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), which case is dispositive of the question here at issue. *World-Wide Volkswagon* involved an action by a husband and wife to recover for personal injuries sustained while they were driving through Oklahoma in an automobile that had been purchased by them in New York while they were New York residents. Defendants included the automobile retailer and its wholesaler, both New York corporations that did no business in Oklahoma. The Court held that:

"[W]e find in the record before us a total absence of those affiliating circumstances that are a necessary predicate to any exercise of state-court jurisdiction. Petitioners carry on no activity whatsoever in Oklahoma. They close no sales and perform no services there. They avail themselves of none of the privileges and benefits of Oklahoma law. They solicit no business there either through salespersons or through advertising reasonably calculated to reach the State. Nor does the record show that they regularly sell cars at wholesale or retail to Oklahoma customers or residents or that they indirectly, through others, serve or seek to serve the Oklahoma market. In short, respondents seek to base jurisdiction on one, isolated occurrence and whatever inferences can be drawn therefrom: the fortuitous circumstance that a single Audi automobile, sold in New York to New York residents happened to suffer an accident while passing through Oklahoma." *Id.* at 295, 100 S.Ct. at 566.

### 1. CAMBRIA

Like the defendant in *World-Wide Volkswagon,* Cambria carries on no activity whatsoever in Idaho. It closes no sales and performs no services here. It avails itself

of none of the privileges or benefits of Idaho law. It solicits no business here through advertising or otherwise. It does not attempt to sell helicopters here nor did it sell a helicopter to an Idaho resident. The record establishes that Cambria sold the helicopter in question not to decedent's employer, but to Limerick Aviation, another Pennsylvania corporation, which then in turn sold it to decedent's employer. Under the rule set forth in *World-Wide Volkswagon,* we cannot predicate jurisdiction on the fortuitous circumstance that a helicopter sold by a Pennsylvania corporation to a second Pennsylvania corporation would be later purchased by an Idaho corporation and ultimately kill an Idaho resident. In fact, there are fewer reasons compelling in personam jurisdiction as to Cambria than were present in *World-Wide Volkswagon.* Plaintiff has presented no evidence that Cambria was even in the business of selling helicopters or otherwise engaged in the helicopter market unlike the wholesaler and retailer involved in *World-Wide Volkswagon.*

Plaintiff argues that it was foreseeable that Cambria would be haled into an Idaho court. The Supreme Court in *World-Wide Volkswagon* stated as to foreseeability that:

"It is argued, however, that because an automobile is mobile by its very design and purpose it was 'foreseeable' that the Robinsons' Audi would cause injury in Oklahoma. Yet 'foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause.

. . . .

"This is not to say, of course, that foreseeability is wholly irrelevant. But the foreseeability that is critical to the due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather it is that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there.... The Due Process Clause, by ensuring the 'orderly administration of the laws,' ... gives a degree of predictability to the legal system that

allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." 444 U.S. at 295, 297, 100 S.Ct. at 566–67.

Cambria could not have reasonably anticipated being haled into an Idaho court. Cambria conducted no activities here and did not even conduct business with an Idaho corporation or resident. It could not have structured its activities in any different manner as to render itself immune from suit in Idaho. If this Court were to permit jurisdiction over Cambria merely because it, at one time, owned and sold the helicopter in question we would be finding that "[e]very seller of chattels ... appoint[s] the chattel his agent for service of process. His amenability to suit ... travel[s] with the chattel." *Id.* at 296, 100 S.Ct. at 566. The mere fact that a helicopter is by definition mobile and could foreseeably enter any state in the union is insufficient to award a state jurisdiction over the seller thereof. This type of rule was rejected by the Supreme Court in *World-Wide Volkswagon* and we will not adopt it in this case.

■ Based on the foregoing analysis, we hold that Cambria did not maintain the "minimum contacts" with the State of Idaho necessary for our courts to exercise jurisdiction over it consistent with due process principles.

## 2. KEYSTONE

■ Like the defendant in *World-Wide Volkswagon,* Keystone carries on no activity whatsoever in Idaho. It avails itself of none of the privileges or benefits of Idaho law. It does not attempt to service helicopters here nor did it service a helicopter for an Idaho resident. The record establishes that Keystone serviced the helicopter in question not for decedent's employer but for a Pennsylvania corporation. Under the rule of *World-Wide Volkswagon,* we cannot predicate jurisdiction on the fortuitous circumstance that a helicopter serviced in Pennsylvania by a Pennsylvania corporation

for a Pennsylvania corporation happened to be purchased by an Idaho corporation and was involved in an accident which resulted in the death of an Idaho resident.

Plaintiff argues that Keystone, by its advertising, has attempted to serve an Idaho market for its helicopter repair service and so should be subject to the jurisdiction of Idaho courts.[1] Her affidavit shows that Keystone advertises in a national publication that it has service centers in Pennsylvania, Florida and Arizona. This affidavit while showing that Keystone attempted to serve markets in Pennsylvania, Florida and Arizona does not show that Keystone has attempted to serve an Idaho market. Plaintiff made no showing that the advertisement was ever circulated in Idaho or was ever relied upon by a resident of this state in procuring Keystone's services.

The Ninth Circuit Court of Appeals in *Uston v. Grand Resorts, Inc.,* 564 F.2d 1217 (9th Cir.1977), held that an advertisement, standing by itself, is insufficient to rebut corporate denials of activities within a state. A similar holding was reached in *Jacobs v. Lakewood Aircraft Service, Inc.,* 493 F.Supp. 46 (E.D.Pa.1980), where the court held that jurisdiction would not be predicated on advertising alone absent a showing that defendant launched an intensive and sustained advertising campaign in the forum state itself. Plaintiff has not made such a showing.[2]

In *Markby v. St. Anthony Hospital Systems,* 647 P.2d 1068 (Wyo.1982), the court held that where there was no nexus between defendant's only activity in Wyoming and plaintiff's cause of action the

1. Keystone's advertisement states that Keystone maintains one of the largest helicopter parts inventories anywhere, and is an FAA approved repair station.

2. Mrs. Schneider had the burden of proving jurisdictional facts once jurisdiction was challenged in an appropriate manner. *Taylor v. Portland Paramount Corp.,* 383 F.2d 634, 639 (9th Cir.1967).

3. Three criteria have been used in determining the outer limits of in personam jurisdiction: "First, the defendant must purposefully avail himself of the privilege of acting in the forum

defendant did not have sufficient minimum contacts with the state as to confer jurisdiction on Wyoming courts.[3] In this case, Keystone's only involvement with the helicopter came about not because of its advertisements in Idaho but because of its ownership of the subject helicopter prior to its purchase by Cambria and its later service contract with Cambria for maintenance. Since there was no nexus between Keystone's advertising and plaintiff's cause of action, its advertising was not sufficient to subject it to the jurisdiction of Idaho courts.

Plaintiff argues that Keystone delivers its services into the "stream of commerce" with the expectation that consumers from other states would employ their services and therefore should be subject to Idaho court jurisdiction. The "stream of commerce" cases essentially hold that "[t]he forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its *products* into the stream of commerce with the expectation they will be purchased by consumers in the forum State." *World-Wide Volkswagon,* 444 U.S. at 297–98, 100 S.Ct. at 567 (emphasis added).

In *Doggett v. Electronics Corp. of America,* 93 Idaho 26, 454 P.2d 63 (1969), manufacturers of steam boiler components were held to have sufficient contacts with Idaho for our courts to assume jurisdiction over them. We there held:

"In placing their goods in the flow of interstate commerce, the respondents must have had the reasonable expectation

state or of causing important consequences in that state. Second, *the cause of action must arise from the consequences in the forum state of the defendant's activities.* Finally, the activities of the defendant or the consequences of those activities must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *State ex rel. White Lumber Sales, Inc. v. Sulmonetti,* 252 Or. 121, 448 P.2d 571, 574 (1968) (citing *Southern Machine Co. v. Mohasco,* 401 F.2d 374 (6th Cir.1968)) (emphasis added).

that such items would be shipped indiscriminately through the United States. If dangerously defective goods are placed in the interstate flow of commerce, those whose negligence created the defect should be prepared to defend themselves wherever injury should occur." *Id.* at 31–32, 454 P.2d at 68–69.

In *Duignan v. A.H. Robins Co.,* 98 Idaho 134, 559 P.2d 750 (1977), a manufacturer of intrauterine devices was held subject to the jurisdiction of Idaho courts. We there held that its placement of defective goods into the interstate flow of commerce was sufficient to confer jurisdiction on Idaho courts. *Id.* at 138, 559 P.2d at 754.

Keystone is not a manufacturer of goods. It does not send a product into the flow of interstate commerce expecting that product to be purchased by consumers in other states. The manufacturers in *Doggett* and *Duignan* could contemplate that their products would reach consumers nationally. Keystone, however, provides a service. Unlike the manufacturers in the above cases, Keystone serves a more localized market with its customers having to come to it for service at one of its three service centers.

The fact that the helicopters Keystone services are by definition mobile and so will not remain in the states where serviced is not dispositive. As was stated in *World-Wide Volkswagon* "the mere 'unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.'" *World-Wide Volkswagon,* 444 U.S. at 298, 100 S.Ct. at 567 (citing *Hanson v. Denckla,* 357 U.S. at 253, 78 S.Ct. at 1239–40).

In conclusion, Keystone has no agents in the State of Idaho; it has no offices here and there has been no showing that it has ever done business here; it injects no products into the "stream of commerce" and there has been no showing that it has attempted to serve an Idaho market by means of its advertising. In short, it avails itself of none of the privileges or benefits of Idaho law. We therefore hold that Keystone has insufficient contacts with the State of Idaho for our courts to exercise jurisdiction over it consistent with due process principles.

The trial court's order granting Cambria and Keystone's motions to quash service of summons and dismiss for lack of jurisdiction is *affirmed.* Costs to Cambria and Keystone.

DONALDSON, C.J., and SHEPARD, BAKES and HUNTLEY, JJ., concur.