852 P.2d 491

**SAINT ALPHONSUS REGIONAL MEDICAL CENTER, Plaintiff–Appellant,**

v.

**STATE OF WASHINGTON, Defendant–Respondent.**

No. 19357.

Supreme Court of Idaho, Boise, December 1992 Term.

May 13, 1993.

Hawley Troxell Ennis & Hawley, Boise, for plaintiff-appellant. Joseph D. McCollum, Jr. argued.

Evans, Keane, Koontz & Gibler, Boise, and Kenneth O. Eikenberry, Washington Atty. Gen. and Kathryn I. Eims, Asst. Atty. Gen., Seattle, WA, for defendant-respondent. Kathryn I. Eims argued.

TROUT, Justice.

Saint Alphonsus Regional Medical Center (St. Alphonsus) appeals from the trial court's dismissal of its action against the State of Washington (Washington). St. Alphonsus, an approved health care provider under Washington's worker's compensation system, originally brought suit against Washington alleging intentional interference with contractual relations, infringement of interstate commerce and deprivation of property without due process of law after Washington changed its worker's compensation rules governing payment for health care. The trial court granted Washington's motion to dismiss for lack of personal jurisdiction on the grounds that Washington did not have sufficient minimum contacts with Idaho under the Due Process Clause of the United States Constitution, and did not fall within the terms of Idaho's long-arm statute. We do not agree with the trial court's finding that Washington's conduct, as alleged, fell outside the terms of our long-arm statute. We affirm the ruling of the trial court, however, on the grounds that the assertion of jurisdiction over Washington would violate the Due Process Clause of the United States Constitution.

I.

## STANDARD OF REVIEW, FACTS AND PROCEDURAL BACKGROUND

### A. Standard of Review

Although the parties are in relative agreement concerning the relevant facts in this case, we note the standard by which this Court reviews factual questions presented by conflicting affidavits in a motion to dismiss for lack of personal jurisdiction as recently set forth in *Houghland Farms, Inc. v. Johnson*, 119 Idaho 72, 803 P.2d 978 (1990):

On appellate review of involuntary dismissal at the close of plaintiff's proof in a jury case, this court has held that the evidence introduced must be viewed "in the light most favorable to the plaintiffs, and the plaintiffs are entitled to all reasonable inferences which can be drawn from facts established by their case in chief. *Blackburn v. Boise School Bus Co.*, 95 Idaho 323, 325, 508 P.2d 553, 555 (1973).
* * * On appeal from an order granting summary judgment, this court must construe the evidence presented to the district court liberally in favor of the party opposing the order and accord [that party] 'the benefit of all inferences which might be reasonably drawn.' " *Straley v. Idaho Nuclear Corp.*, 94 Idaho 917, 918, 500 P.2d 218, 220 (1972). *Accord, Fairchild v. Olsen*, 96 Idaho 338, 528 P.2d 900 (1974).

These same presumptions should apply to appellate review of the factual questions presented by the conflicting affidavits in a motion to dismiss for lack of personal jurisdiction.

119 Idaho at 74–75, 803 P.2d at 980–81, *citing Intermountain Business Forms Inc. v. Shepard Business Forms Co.*, 96 Idaho 538, 540, 531 P.2d 1183, 1185 (1975).

Thus, our recitation of the pertinent facts takes into consideration our standard of viewing the affidavits presented in the light most favorable to St. Alphonsus and construing the facts asserted in the affidavits liberally in favor of St. Alphonsus.

### B. Facts

Since 1984, St. Alphonsus, a non-profit hospital located in Boise and incorporated in Idaho, has provided medical services to individuals eligible for benefits under Washington's worker's compensation laws. St. Alphonsus maintains a medical provider number with the State of Washington, Department of Labor and Industries (Department). This number allows St. Alphonsus to submit medical bills for reimbursement to the Department located in Olympia, Washington. The Department does not maintain any office outside of Washington.

The Department's first contact with St. Alphonsus occurred in 1984 after St. Alphonsus submitted medical bills for payment. St. Alphonsus was thereafter issued a provider number. Over the years, the Department has mailed memoranda to St. Alphonsus and other out-of-state health care providers notifying them of changes in Washington's worker's compensation rules. In 1986, the State of Washington informed St. Alphonsus, and other Idaho and Oregon health care facilities with provider numbers, that it intended to change its rules for payment of medical services. The Department advised that beginning in February of 1987, Idaho and Oregon health care providers must charge and be reimbursed pursuant to the rates specified in Washington's medical aid rules. Washington began applying a discount procedure in 1987 whereby health care providers were paid according to a percentage of allowed charges (POAC) as established by the Department. The POAC rate is calculated by dividing the actual operating expenses of hospitals operating in Washington by the actual rate setting revenue of Washington hospitals. The POAC rate is applied to treating facilities both inside and outside of Washington.

The POAC rate has declined since its inception in 1987. In February of 1987, the POAC rate was ninety-seven percent and in July of 1990, it had declined to approximately eighty percent. As a result, St. Alphonsus has been reimbursed for a declining portion of the total services billed to the Department. The difference between the cost of treatment provided by St. Alphonsus and the amount the Department has reimbursed St. Alphonsus for the period February, 1987 to July, 1990 is approximately $13,500.

Pursuant to the Department's rules, St. Alphonsus and other health care providers are prohibited from billing the treated worker for the difference between the billed amount and the reimbursed amount. St. Alphonsus is required to accept the POAC rate as full payment for medical services rendered to Washington workers.

## C. Procedural Background

St. Alphonsus filed this action on September 7, 1990, alleging: (1) Washington's application of the POAC rate is an infringement of interstate commerce and in violation of Article 1, Section 8, of the United States Constitution; (2) Washington's application of the POAC rate deprives St. Alphonsus of its property without due process of law in violation of the Fourteenth Amendment and (3) Washington intentionally interfered with the express and implied contracts between St. Alphonsus and its patients by precluding St. Alphonsus from billing its patients for the deficit amount not paid by the Department.

In November of 1990, Washington moved to dismiss the complaint for lack of personal jurisdiction. In its memorandum opinion of February 13, 1991, the trial court granted Washington's motion to dismiss on the grounds that Washington did not have sufficient minimum contacts with Idaho to meet the test for traditional notions of fair play and substantial justice, and did not fall within the terms of Idaho's long-arm statute.

St. Alphonsus' motion for reconsideration was summarily denied. On appeal, St. Alphonsus contends that by revising its worker's compensation rules to preclude St. Alphonsus from collecting deficiencies in the amount of medical services provided from the individual receiving medical treatment, Washington has purposefully directed its acts into Idaho, thereby subjecting it to the jurisdiction of an Idaho court.

## II.

## THE TRIAL COURT'S DISMISSAL OF ST. ALPHONSUS' ACTION FOR LACK OF PERSONAL JURISDICTION WAS PROPER

■ In order for an Idaho court to exert jurisdiction over an out-of-state defendant, two criteria must be met; the act giving rise to the cause of action must fall within the scope of our long-arm statute and the constitutional standards of due process must be met. *Schneider v. Sverdsten Logging Co.,* 104 Idaho 210, 211, 657 P.2d

1078, 1079 (1983); *see also Schwilling v. Horne*, 105 Idaho 294, 297, 669 P.2d 183, 186 (1983).

## A. Idaho Long–Arm Statute

■ The Idaho long-arm statute, I.C. § 5–514,[1] provides for the exercise of personal jurisdiction over those who do any of the acts enumerated in the statute so long as the cause of action "aris[es] from the doing of any said acts." *Houghland Farms, Inc.*, 119 Idaho at 75, 803 P.2d at 981. While St. Alphonsus does not specify under which sub-section of the long-arm statute personal jurisdiction exists, at various points in this appeal it appears to argue that I.C. § 5–514(a) transacting business, (b) commission of a tortious act, and (d) contracting to insure any person within the state, all apply. Because we conclude that Washington falls within the provision regarding the commission of tortious acts in this instance, we will confine our analysis to that provision.

■ This Court has consistently held that an allegation that an injury has occurred in Idaho in a tortious manner is sufficient to invoke the tortious act language of I.C. § 5–514(b). *See, e.g., Schneider v. Sverdsten Logging Co.*, 104 Idaho at 212, 657 P.2d at 1080; *Duignan v. A.H. Robins Co.*, 98 Idaho 134, 137, 559 P.2d 750, 753 (1977); *Doggett v. Electronics Corp. of Am.*, 93 Idaho 26, 454 P.2d 63 (1969). Further, this section is designed to provide a forum for Idaho residents, is remedial legislation of the most fundamental nature and should be liberally construed. *Doggett*, 93 Idaho at 30, 454 P.2d at 67. Washington argues that its application of the POAC rate is not tortious conduct within the long-arm statute since the POAC rate is part of Washington's rules and regulations promulgated pursuant to legislative authority and in furtherance of its police powers. Whether Washington's conduct is actually tortious, however, is a factual question and irrelevant to our examination of jurisdiction under the long-arm statute. Given the remedial nature of our long-arm statute, and construing the facts in the affidavits in a light most favorable to St. Alphonsus, we find that jurisdiction exists under § 5–514(b).

Having found jurisdiction under § 5–514(b), St. Alphonsus must satisfy one additional test: whether the assertion of jurisdiction by an Idaho court is permissible under the Due Process Clause of the United States Constitution. *Duignan*, 98 Idaho at 137, 559 P.2d at 753.

## B. Due Process Clause of the United States Constitution

■ The Due Process Clause requires that a non-resident defendant have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign," and "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985) *quoting Shaffer v. Heitner*, 433 U.S. 186, 218, 97 S.Ct. 2569, 2587, 53 L.Ed.2d 683 (1977) (Stevens, J., concurring in judgment) and *World-wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). It is axio-

---

1. I.C. § 5–514 provides, in pertinent part, that:

 Any person, firm, company, association or corporation, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits said person, firm, company, association or corporation, and if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:
 (a) The transaction of any business within this state which is hereby defined as the doing of any act for the purpose of realizing pecuniary benefit or accomplishing or attempting to accomplish, transact or enhance the business purpose or objective or any part thereof of such person, firm, company, association, or corporation;
 (b) The commission of a tortious act within this state;

 .　　.　　.　　.　　.

 (d) Contracting to insure any person, property or risk located within this state at the time of contracting;

 .　　.　　.　　.　　.

matic that before a state can exercise jurisdiction over a non-resident defendant, the defendant must "purposefully [avail] itself of the privilege of conducting activities in the forum state, thus invoking the benefits and protections of its laws." *Schneider*, 104 Idaho at 212, 657 P.2d at 1080, *quoting Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958).

■ Due process does not require the physical presence of the defendant in the forum state, *Southern Idaho Pipe & Steel Co. v. Cal–Cut Pipe & Supply, Inc.*, 98 Idaho 495, 497, 567 P.2d 1246, 1248 (1977), but it prohibits an Idaho court from exercising personal jurisdiction over a non-resident defendant unless that defendant has certain minimum contacts with Idaho such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Schneider*, 104 Idaho at 212, 657 P.2d at 1080 *citing International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The minimum contacts required by *International Shoe* are supplied if the defendant " 'purposefully directs' his activities at residents of the forum state and the litigation arises out of or relates to those activities." *Houghland Farms, Inc.*, 119 Idaho at 76, 803 P.2d at 982, *quoting Burger King Corp.*, 471 U.S. at 477, 105 S.Ct. at 2182.

■ Our jurisdictional analysis in the present case is concerned with specific jurisdiction as opposed to general jurisdiction. *Cf. Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 438, 72 S.Ct. 413, 414, 96 L.Ed. 485 (1952) (foreign corporation's operation of its business within Ohio was such a "continuous and systematic, but limited, part of its general business" that the exercise of general jurisdiction by an Ohio court was "reasonable and just"). In analyzing whether there are sufficient contacts for the exercise of specific personal jurisdiction, "the suit for which jurisdiction is sought must arise out of or relate to the defendant's contacts with Idaho. It is not just any contacts by the defendant with Idaho that will sustain the exercise of specific personal jurisdiction, but only those

out of which the suit arises or those that relate to the suit." *Houghland Farms, Inc.*, 119 Idaho at 75, 803 P.2d at 981; *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

■ Examining the facts alleged by St. Alphonsus in its affidavit opposing Washington's motion to dismiss and bearing in mind the evidentiary presumption in favor of St. Alphonsus as articulated in *Houghland Farms, Inc.*, 119 Idaho at 74–75, 803 P.2d at 980–81, we find the following contacts between the non-resident defendant, Washington, and the resident plaintiff, St. Alphonsus:

1. Since 1984, St. Alphonsus has billed Washington for the cost of medical treatment and rehabilitation services provided to Washington workers eligible for benefits under Washington's worker's compensation system. Until 1987, Washington reimbursed St. Alphonsus for the entire amount billed.

2. In 1986, St. Alphonsus received notice from Washington that it intended to adjust the method of paying bills for medical and rehabilitation expenses submitted by out-of-state providers.

3. In 1987, Washington began applying a discount rate, or percent-of-allowed charges, to the bills submitted by St. Alphonsus which resulted in St. Alphonsus not receiving the full amount of charges billed Washington.

4. In 1988, Washington sent St. Alphonsus a document styled "Provider Application and Notice to Provider for Billing and Provider Account Number." St. Alphonsus completed and sent this application to Washington, after first modifying the agreement to the extent it required acceptance of Washington's medical aid rules and fees. Washington thereafter issued St. Alphonsus an active provider number.

From these facts, we are unable to hold, as required by *Hanson v. Denckla*, that minimum contacts exist in the instant case because Washington has "purposefully [availed] itself of the privilege of conducting activities in [Idaho], thus invoking the

benefits and protections of [Idaho's] laws." 357 U.S. at 253, 78 S.Ct. at 1239–40. Nor are we able to say that Washington's contacts with Idaho are "such that [Washington] should reasonably anticipate being haled into court there." *World-wide Volkswagen Corp.*, 444 U.S. at 297, 100 S.Ct. at 567. The failure of St. Alphonsus to meet the "purposeful availment" and "reasonable anticipation" standard is patently evident from a review of the pertinent facts in this case.

Washington's involvement with Idaho in the instant case was a function of the unilateral decision of some Washington workers to move or seek medical care out of state. This relates to both the transient nature of our respective states' work force and the proximity of Washington to Idaho as opposed to purposeful availment on the part of Washington. Washington neither instigated nor attempted to foster its relationship with St. Alphonsus. St. Alphonsus voluntarily chose to participate in Washington's worker's compensation system by treating Washington patients and then sending the bill to Washington. St. Alphonsus then voluntarily chose to continue participating in the program after being apprised of changes in the repayment rate.

Washington's actual contacts with Idaho were limited to: (1) reimbursing St. Alphonsus for medical bills submitted to the Washington State Department of Labor and Industry in Olympia, Washington; (2) sending a provider application to St. Alphonsus; (3) issuing a provider number to St. Alphonsus; and (4) informing St. Alphonsus of changes in Washington's worker's compensation rules. At all times pertinent to the above facts, St. Alphonsus could have elected to discontinue its participation in Washington's worker's compensation system. In light of St. Alphonsus' continued voluntary participation and Washington's limited contact with Idaho, we cannot find that Washington reasonably

anticipated being haled into an Idaho court when it informed St. Alphonsus of changes in its reimbursement rate and thereafter began applying those changes. Moreover, when analyzing whether there are sufficient contacts for the exercise of personal jurisdiction, it is not any contact by the defendant that will sustain the exercise of jurisdiction but only those out of which this suit arises or those that relate to the suit. *Houghland Farms, Inc.*, 119 Idaho at 75, 803 P.2d at 981. St. Alphonsus alleged that Washington's application of its POAC rate created causes of action for interference with contract, infringement of interstate commerce and deprivation of due process. Thus, the activity to which St. Alphonsus complains is Washington's application of its POAC rate. Washington's decision to apply a POAC rate and its subsequent application of this rate to out-of-state providers was done in furtherance of its own worker's compensation system, irrespective of its contacts with Idaho, and is within its province as a sovereign. We do not agree with St. Alphonsus' assertion that Washington purposefully availed itself of the benefits and protections of Idaho law or anticipated being haled into an Idaho court as a result of its adoption and application of its POAC rate.

 Finding a lack of minimum contacts, we find it unnecessary to address whether the exercise of jurisdiction over Washington would violate traditional notions of fair play and substantial justice.[2] We also find it unnecessary to address Washington's claim of sovereign immunity.

### III.

### CONCLUSION

Based on the foregoing, we affirm the trial court's order of dismissal.

We award costs to respondent.

---

**2.** Factors to determine whether the exercise of jurisdiction comports with fair play and substantial justice include the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985).

BISTLINE and JOHNSON, JJ., REINHARDT, District Judge Pro Tem., and BAKES, J. Pro Tem. (following retirement on February 1, 1993) concur.