950 P.2d 1248

**Martin SMALLEY, Plaintiff–Appellant,**

v.

**Teresa KAISER, Director of the State of Missouri Department of Social Services Division of Child Support Enforcement; Lisa Helle, Authorized Representative of the Director of the State of Missouri Department of Social Services Division of Child Support Enforcement; Kay Moore, Child Support Enforcement Technician, State of Missouri Department of Social Services Division of Child Support Enforcement; and John Does 1 through 100, Defendants–Respondents.**

No. 23667.

Supreme Court of Idaho.

Coeur d'Alene, October 1997 Term.

Dec. 30, 1997.

Paine, Hamblen, Coffin, Brooke & Miller, Coeur d'Alene, for appellant. Michael B. Hague argued.

John B. Geddes, Coeur d'Alene; Gretchen E. Rowan, Asst. Attorney General, State of Missouri, St. Louis, for respondents. Gretchen E. Rowan argued.

JOHNSON, Justice.

This is a personal jurisdiction case. We conclude that Idaho does not have personal jurisdiction over a Missouri administrative agency and its employees in a suit seeking injunctive relief prohibiting certain child support collection activities.

## I.

### THE BACKGROUND AND PRIOR PROCEEDINGS

Martin Smalley (the father) is a resident of Kootenai County, Idaho. An Idaho court awarded the father custody of his child (the child). Later, the child went to live with her mother (the mother) in Missouri. A Missouri court granted the mother custody of the child and ordered the father to pay child support (the Missouri support order). The mother requested the assistance of the Missouri Department of Social Services Division of Child Support Enforcement (the department) in enforcing the Missouri support order against the father.

The department sent the father a letter advising him of the methods it could employ in attempting to collect child support, including sending the child support debt information to a credit bureau. The father advised the department that the Missouri support order was invalid and unenforceable because the Missouri court did not have personal jurisdiction over him. Pursuant to federal law, the department sent the father a notice that it was required by federal law to report to consumer reporting agencies information about parents who owe $1,000 or more in past-due support. The notice stated that the department's records showed that the father owed $4,880 in past due support. The department caused there to be placed in the records of the Coeur d'Alene Credit Bureau in Kootenai County, Idaho (the credit bureau), a report (the report) that the father was delinquent in the payment of child support. The department also issued a wage attachment to the father's employer in the state of Washington. The father alleges that he has suffered a loss of his creditworthiness as a result of the actions of the department and its employees.

The father brought suit in Idaho against the department and its employees seeking an injunction declaring the Missouri child support order void and unenforceable and prohibiting the department and its employees from (1) seeking to enforce the Missouri child support order, (2) reporting the alleged delinquency, and (3) attempting to intercept the father's earnings. The trial court issued a temporary restraining order and later a preliminary injunction. An attorney for the department and its employees filed a notice of appearance. Later, the department and its employees moved to dismiss the case for lack of personal jurisdiction, and, in the alternative, for failure to join an indispensable party.

The trial court dismissed the case based upon lack of personal jurisdiction. The father appealed.

## II.

### THE FATHER DID NOT PRESERVE FOR APPEAL THE QUESTION CONCERNING WAIVER OF THE DEFENSE OF LACK OF PERSONAL JURISDICTION.

▮ The father asserts that the department and its employees waived the defense of lack of personal jurisdiction because of the general appearance by their attorney. We do not address this issue because the father failed to preserve the issue for appeal by

failing to present it to the trial court. Ordinarily, we will not consider on appeal an issue that was not presented in the trial court. One exception to this rule is that we will consider the lack of subject matter jurisdiction that is raised for the first time on appeal *Idaho State Ins. Fund v. Turner*, 130 Idaho 190, 191, 938 P.2d 1228, 1229 (1997). This case concerns personal jurisdiction, not subject matter jurisdiction. Therefore, we do not address the waiver issue.

### III.

### FOR IDAHO TO EXERCISE PERSONAL JURISDICTION OVER THE DEPARTMENT AND ITS EMPLOYEES WOULD VIOLATE DUE PROCESS.

The father asserts that the trial court should have ruled that there is personal jurisdiction over the department and its employees in Idaho. We conclude that it would violate due process for Idaho to exercise personal jurisdiction over the department and its employees.

In *Saint Alphonsus Regional Medical Center v. Washington*, 123 Idaho 739, 852 P.2d 491 (1993), the Court restated the criteria we must employ in addressing the issue presented here:

> In order for an Idaho court to exert jurisdiction over an out-of-state defendant, two criteria must be met; the act giving rise to the cause of action must fall within the scope of our long-arm statute and the constitutional standards of due process must be met.

*Id.* at 742, 852 P.2d at 494.

 The father alleged that the report the department and its employees caused to be placed in the records of the credit bureau injured his creditworthiness. These allegations are sufficient to subject the department and its employees to personal jurisdiction under our long-arm statute. *Id.* at 743, 852 P.2d at 495 (reaffirming that an allegation that an injury has occurred in Idaho in a tortious manner is sufficient to invoke the long-arm statute).

 We must next consider whether there are sufficient minimum contacts to support the exercise of personal jurisdiction over the department and its employees. *Western States Equip. Co. v. American Amex Inc.*, 125 Idaho 155, 158, 868 P.2d 483, 486 (1994). In doing so, we adhere to the following standards:

> In *Houghland Farms[, Inc. v. Johnson,* 119 Idaho 72, 803 P.2d 978 (1990)], the Court noted that I.C. § 5–514 [the long-arm statute] provides for the exercise of specific personal jurisdiction, and therefore the "suit for which jurisdiction is sought must arise out of or relate to the defendant's contacts with Idaho." Not just any contacts with Idaho will suffice to sustain the exercise of jurisdiction. The United States Supreme Court has described the idea of minimum contacts as "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." For specific personal jurisdiction, the ensuing litigation must arise out of or relate to the contacts. Whether there have been sufficient contacts must be determined on a case by case basis.

*Id.* (citations omitted).

In *Western States,* the Court also pointed out that the United States Supreme Court has ruled that the contacts must be sufficient that the defendants could " 'reasonably anticipate being haled into court' " in the forum state. *Id.* (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 287, 100 S.Ct. 559, 562, 62 L.Ed.2d 490 (1980)).

The only contacts the department and its employees had with Idaho were: (1) a letter and a notice sent to the father warning him of the actions that would be taken in order to collect delinquent child support, and (2) the report they caused to be placed in the records of the credit bureau. By the letter and the notice neither the department nor its employees purposefully availed themselves of the privilege of conducting activities in Idaho, nor could they reasonably have anticipated being haled into court in Idaho. They were only carrying out the requirements of federal

and Missouri law to communicate possible collection procedures to the father. Causing the report to be placed in the records of the credit bureau, however, is more problematic.

■ In considering a request to dismiss for lack of personal jurisdiction, both the trial court and this Court must consider the facts asserted in the light most favorable to the father and all reasonable inferences that may be drawn in favor of the father from these asserted facts. *Houghland Farms*, 119 Idaho at 74–75, 803 P.2d at 980–81. Applying this standard to the contact the department and its employees had with Idaho by causing the report to be placed in the records of the credit bureau, we conclude that this is a sufficient minimum contact to subject the department and its employees to personal jurisdiction in Idaho concerning the father's request to enjoin them from reporting falsely to third parties that the father was delinquent in paying child support. The same is not true of the father's request that the Idaho court declare the Missouri support order void and unenforceable or to prohibit the department and its employees from seeking to intercept the father's wages and tax refunds or from similar collection activities. By this ruling we do not intend to indicate the validity of the father's contention that the report was false, but only to indicate that causing the report to be placed in the records of the credit bureau was sufficient to demonstrate that the department and its employees had availed themselves of the privilege of conducting activities within this state so that they should have reasonably anticipated being haled into court here.

■ Our analysis of the due process implications of subjecting the department and its employees to Idaho's jurisdiction on this one claim does not end here, however. In *Western States,* we pointed out the next stage of the analysis:

> The due process analysis is a two-step process. Once a court determines that the requisite minimum contacts with the forum state exist, the court must then consider the contacts in light of other factors to determine whether the assertion of personal jurisdiction would comport with "traditional notions of fair play and substantial

justice." This analysis permits the court to consider:

- ■ "the burden on the defendant,"
- ■ "the forum State's interest in adjudicating the dispute,"
- ■ "the plaintiff's interest in obtaining convenient and effective relief,"
- ■ "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and
- ■ the "shared interest of the several States in furthering fundamental substantive social policies."

125 Idaho at 158–59, 868 P.2d at 486–87 (citations omitted).

Considering these factors, we conclude that the assertion of personal jurisdiction by an Idaho court would not comport with fair play and substantial justice. The father's underlying allegation that the report is false because it states that the father is delinquent in the payment of child support will depend on the validity of the Missouri support order. Missouri and not Idaho is the proper forum for this determination. The department's authority to assist the mother in collection of support is granted by Missouri law. Federal law specifies certain procedures the department must follow. Idaho's only interest in the validity of the Missouri order is that the father lives here. This is an insufficient interest when balanced against the burden to the department and its employees to defend in Idaho, the efficient resolution of the controversy over the validity of the Missouri order, and the shared interest of several states in furthering the fundamental substantive social policy of collecting child support for the benefit of children. Therefore, we conclude it would violate due process to subject the department and its employees to Idaho's jurisdiction even on the limited issue of enjoining them from reporting falsely to third parties that the father is indebted for child support.

### IV.

### CONCLUSION

We affirm the trial court's dismissal of the case.

We award the department and its employees costs, but not attorney fees, on appeal.

TROUT, C.J., and SILAK and WALTERS, JJ., concur.

SCHROEDER, Justice, dissents.

I dissent from the Court's conclusion that due process precludes the district court in Idaho from exercising personal jurisdiction over the respondents.

The divorce in this case took place in California. At that time, the mother was granted primary physical custody of the child and Mr. Smalley was granted reasonable visitation and ordered to pay child support of $300.00 per month. Thereafter, he moved to Kootenai County, Idaho, and the mother moved with the child to Payette County, Idaho. In time the child moved to Kootenai County to reside with Mr. Smalley. The mother moved to the state of Missouri. Mr. Smalley filed a petition in Kootenai County seeking primary physical custody of the child. The mother answered but did not participate in the action. The Idaho court entered a custody and child support order awarding primary physical custody to Mr. Smalley and ordering that neither party pay child support to the other. Subsequently, the child traveled to Missouri to spend time with her mother, and the mother filed a petition in Missouri to obtain custody of the child. Mr. Smalley voluntarily sent child support at the level set forth in the California action, and he advised counsel for the mother that he objected to the proposition that he was subject to personal jurisdiction of the Missouri courts for the purposes of assessing child support. He has never been to Missouri and has had no contact with Missouri beyond the fact that his child moved there.

The question is whether the department in Missouri and its employees had enough contact with Idaho to meet constitutional standards of due process to allow Idaho to exercise jurisdiction under the Long Arm Statute. Those standards have been met in this case. The Department of Child Support Enforcement in Missouri was aware that Mr. Smalley was in Idaho and that any action that it took against him would affect him in Idaho. On December 2, 1995, the Department sent him a letter in Idaho notifying him of the support payments and stating that if he owed past due support:

DCSE MUST TAKE LEGAL ACTION AGAINST YOU. THIS ACTION MIGHT INCLUDE WITHHOLDING MONEY FROM YOUR INCOME, INTERCEPTING YOUR FEDERAL AND STATE INCOME TAX REFUND, ASKING FINANCIAL INSTITUTIONS TO PROVIDE INFORMATION ABOUT YOUR ASSETS, OR SENDING YOUR CHILD SUPPORT DEBT INFORMATION TO A CONSUMER REPORTING AGENCY (CREDIT BUREAU). OTHER LEGAL ACTIONS MAY ALSO BE TAKEN. INTEREST MAY BE CALCULATED ON ANY PAST DUE SUPPORT AMOUNTS.

Mr. Smalley responded through counsel and explained his position that the Missouri judgment and order was invalid and unenforceable. The Missouri Department responded with a "Notice of Consumer Reporting Agency Referral" that was issued to Mr. Smalley. Counsel for Mr. Smalley wrote legal counsel for the Missouri Department stating his belief that the enforcement proceedings were improper because the judgment obtained in Missouri was void for lack of jurisdiction and that a report of delinquency in payment of child support to third parties would be defamatory. Subsequently, the director of the State of Missouri Department of Social Services Division of Child Support Enforcement issued an Administrative Order on an Existing Order and an Income Withholding Order directed to Mr. Smalley's employer at its address in Vancouver, Washington. When Mr. Smalley applied for credit with a Kootenai County credit union, he learned that his credit rating had been damaged. An employee of the Missouri Department confirmed that she caused a copy of the Income Withholding Order to be sent to Mr. Smalley's employer and that she caused the credit report to be released. It is indisputable that if the credit report was released, it would appear in Idaho. There would be no reason to release it except to compel action from Mr. Smalley in Idaho.

The following is a summary of the contacts that the Missouri Department has had with Idaho that make it fundamentally fair for an Idaho court to exercise personal jurisdiction: (1) a Department official contacted Mr. Smalley in Idaho, fully aware that any action against him would take place in Idaho; (2) the Missouri Department was aware from counsel in Idaho that Mr. Smalley contested Missouri's right to act; (3) a Missouri Department official caused Mr. Smalley's employer to withhold payment of wages to Mr. Smalley in Idaho by issuance of the Income Withholding Order; and (4) Missouri officials intentionally damaged his credit in Idaho by release of a credit report, knowing it would be transmitted to Idaho. Additionally, the alleged injuries to Mr. Smalley occurred in Idaho.

The Court notes the factors outlined in *Western States* which may be considered in determining whether traditional notions of fair play and substantial justice are met by an Idaho court exercising jurisdiction under the Long Arm Statute. Among those are "the burden on the defendant." Doubtless, it would be burdensome for Missouri to defend its actions in Idaho, but not very burdensome. A limited legal issue is presented. Did Missouri have jurisdiction to set child support? If so, Mr. Smalley's complaints are at an end. That is an issue that can be decided on a motion with a limited burden on Missouri. The next step is "the forum state's interest in adjudicating the dispute." An Idaho resident has been subject to significant action to his detriment in his home state. There is as much interest in Idaho adjudicating this issue as in any other case. The third step is "the plaintiff's interest in obtaining convenient and effective relief." Essentially, the court requires an individual of limited means to contest this case in a far away jurisdiction where he has never been, while the damage to his credit reputation continues in Idaho. Mr. Smalley has a great interest in obtaining convenient and effective relief that can be afforded in Idaho, not Missouri. The fourth and fifth issues are "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several states in furthering fundamental sub-stantive social policies." These factors are a wash to either party. The issue is limited and can be determined in either state, and each has the same interest in fundamental social policies.

The result of this case is that an Idaho resident who has been injured by intentional acts of a Missouri department directed towards him in Idaho, utilizing credit reporting systems in Idaho, cannot have a limited legal decision determined in Idaho. He must go to Missouri. There may be reasons an Idaho court should not act or grant Mr. Smalley relief, but dismissal of his claim should not be on the basis of insufficient contacts with Idaho to meet due process standards.