IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 39964

| | | |
|---|---|---|
| PROFITS PLUS CAPITAL MANAGEMENT, LLC, a Delaware limited liability company; DOLLARS AND SENSE GROWTH FUND, LP, a Delaware limited partnership; ROBERT COLEMAN, an individual, | ) ) ) ) ) ) ) | Boise, February 2014 Term

2014 Opinion No. 65

Filed: July 8, 2014 |
| Plaintiffs-Counterclaimants-Respondents, | ) ) ) | Stephen W. Kenyon, Clerk |
| v. | ) ) | |
| JEFFREY PODESTA, an individual; and STREET SEARCH, LLC, a New Jersey limited liability company, | ) ) ) ) ) | |
| Defendants-Counterdefendants-Appellants. | ) ) ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho in and for Ada County. Hon. Richard D. Greenwood, District Judge.

The judgment of the district court is affirmed. Attorney fees and costs to Coleman on appeal.

Clark & Associates, Eagle, for appellants. Eric R. Clark argued.

Jones Gledhill Fuhrman Gourley, Boise, for respondents. Kimbell D. Gourley argued.

---

BURDICK, Chief Justice.

This case arose out of a contract dispute when Robert Coleman, Profits Plus Capital Management, LLC ("Profits Plus"), and Dollars and Sense Growth Fund Limited Partnership ("Dollars and Sense") filed a claim for declaratory judgment against Jeffrey Podesta and Street Search, LLC. Coleman, Profits Plus, and Dollars and Sense sought a judgment declaring that

1

they did not have a contract with either Podesta or Street Search. Podesta and Street Search then counterclaimed seeking damages for breach of contract, fraud, constructive fraud, and breach of fiduciary duties. Ultimately, only Podesta and Street Search's breach of contract and breach of fiduciary duty claims went to the jury, which decided those claims in favor of Coleman, Profits Plus, and Dollars and Sense. Podesta and Street Search now appeal a number of the district court's decisions made before, during, and after trial. We affirm the district court's decisions.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Respondent Robert Coleman resides in Idaho and is the sole member and manager of Profits Plus. Profits Plus serves as the sole general partner for Dollars and Sense, an investment fund that purchases, sells, and stores precious metals. Both Dollars and Sense and Profits Plus are organized in Delaware. The precious metals purchased by Profits Plus are stored in facilities located in Idaho. As a general partner, Profits Plus is only entitled to a management fee and some incentive fees from Dollars and Sense. All other profits, losses, and revenues Dollars and Sense generates are distributed solely to the limited partners based upon their investments.

Appellant Jeffrey Podesta is a resident of New Jersey and the sole member and manager of Street Search, a New Jersey limited liability company. Operating as Street Search, Podesta locates investors and raises capital for investment opportunities for which Street Search usually charges a monthly fee along with a percentage of the money raised.

In May 2008, Coleman contacted Podesta to discuss marketing Dollars and Sense. Podesta was interested in the concept of the precious metals market and felt that he, with his experience in raising capital, and Coleman, with his knowledge of the precious metals market, would make a great combination.

In late April or early May of 2009, Coleman and Podesta traveled to New York to meet with various individuals, including an attorney, to discuss the formation of a new entity, an open-ended mutual fund consistent with the limited partnership, but not limited by the same securities regulations. Following these meetings, the parties agreed that the new fund idea was too expensive to pursue. From here, the parties disagree as to what form of agreement, if any, was reached between them.

Podesta and Street Search contend that because Coleman could not afford Street Search's fees, Coleman offered Street Search a fifty percent ownership interest in Dollars and Sense in exchange for Podesta's services. Podesta and Street Search also claim that Coleman amended the

2

name of Dollars and Sense to Street Search Dollars and Sense as consideration for the offer of ownership interest and Podesta's agreement to act as President and CEO. In contrast, Coleman asserts that he only entered into an independent contractor agreement with Street Search and never promised an ownership interest in Dollars and Sense to either Podesta or Street Search. He asserts that the name of the fund was only amended to Street Search Dollars and Sense upon Podesta's claim that it would better enable Street Search and Podesta to market Dollars and Sense. Coleman also points out that while the name of Dollars and Sense was changed, no substantive alterations were made to the limited partnership agreement.

Although the parties now dispute the terms of any agreement between them, Podesta and Street Search worked with Coleman marketing Street Search Dollars and Sense throughout 2009 until their falling-out in March 2010. The dispute arose on March 2, 2010, when Coleman emailed Podesta expressing his displeasure in Podesta's performance at raising capital and stating that they needed to talk. Podesta responded that same day declaring that Coleman's attempts to steal his portion of the fees were illegal. The parties' subsequent emails devolved from there, with Podesta's attorney contacting Coleman on March 5, 2010, to assert an ownership interest in Dollars and Sense. Podesta asserted that the agreement between the parties was not a consulting agreement, but a contract promising Street Search a fifty percent ownership interest in Dollars and Sense in exchange for Podesta's services.

On July 22, 2010, Coleman, Profits Plus, and Dollars and Sense [collectively "Coleman"] filed a complaint for declaratory judgment. Podesta and Street Search filed a notice of special appearance in accordance with I.R.C.P. 4(i) on September 27, 2010, and a motion to dismiss for lack of personal jurisdiction on October 12, 2010. On December 17, 2010, the district court issued its decision denying Podesta and Street Search's motion. Podesta and Street Search then filed their answer and counterclaim seeking damages for breach of contract, fraud, constructive fraud, and breach of fiduciary duties. Coleman filed three motions for summary judgment and succeeded in dismissing Podesta's claims as an individual for breach of contract, constructive fraud, and breach of fiduciary duty.

After seven days of trial, the court ultimately instructed the jury on the claims by Street Search against Coleman for breach of contract and breach of fiduciary duties. The jury was further instructed on Coleman's equitable estoppel defenses. The jury returned a special verdict finding that no contract existed.

3

Street Search then filed a motion for judgment notwithstanding the verdict and an alternative motion for new trial following a jury trial—both of which the district court denied. Coleman timely moved for an award of attorney fees and costs pursuant to I.C. § 12-120(3) and I.R.C.P 54. While disallowing some fees related to expert witnesses and other fees associated with the status of Podesta's securities licenses, the court awarded Coleman the majority of his requested attorney fees under I.C. § 12-120(3) as the prevailing party. On March 17, 2012, Street Search filed its first notice of appeal, which was subsequently amended twice following the two amendments to the judgment.

## II. ISSUES ON APPEAL

1. Whether the district court had personal jurisdiction over Podesta and Street Search.
2. Whether the district court abused its discretion in denying Podesta and Street Search's motion for a new trial.
3. Whether the district court abused its discretion in excluding evidence as settlement negotiations.
4. Whether the district court erred by failing to instruct the jury on fraud and constructive fraud.
5. Whether the district court abused its discretion in refusing to instruct the jury on promissory estoppel.
6. Whether the district court abused its discretion in refusing to allow Podesta and Street Search to present evidence of tort damages.
7. Whether either party is entitled to attorney fees on appeal.

## III. ANALYSIS

Podesta and Street Search appeal a number of the district court's decisions made before, during, and after trial. These decisions include denying Podesta and Street Search's motion to dismiss for lack of personal jurisdiction, denying their motion for new trial, dismissing their fraud and constructive fraud claims, excluding certain evidence, and refusing to instruct the jury regarding promissory estoppel. Because the issue of jurisdiction could be dispositive, it will be addressed first.

### A. Personal Jurisdiction

Podesta and Street Search [collectively "Street Search"] claim that the district court incorrectly held that it had personal jurisdiction over them when neither conducted business in Idaho as required by Idaho's long arm statute. Coleman argues that the district court properly

4

exercised jurisdiction and that this issue is moot because Street Search acquiesced to jurisdiction by filing counterclaims in Idaho.

The question of the existence of personal jurisdiction over an out-of-state defendant is one of law, which this Court reviews freely. *Blimka v. My Web Wholesaler, LLC*, 143 Idaho 723, 726, 152 P.3d 594, 597 (2007) (quoting *Knutsen v. Cloud,* 142 Idaho 148, 150, 124 P.3d 1024, 1026 (2005)). When reviewing a motion to dismiss based on lack of personal jurisdiction, this Court applies the same standard as when reviewing appeals from summary judgment orders; "we construe the evidence presented to the district court in favor of the party opposing the order and accord that party the benefit of all inferences which might be reasonably drawn." *Knutsen*, 142 Idaho at 150, 124 P.3d at 1026. Accordingly, in reviewing the district court's denial of Street Search's motion to dismiss, we construe the evidence in favor of Coleman.

There are two requirements for an Idaho court to properly exercise jurisdiction over non-resident defendants: (1) the non-resident's actions must fall within the scope of Idaho's long-arm statute; and (2) jurisdiction over the non-resident defendant must not violate the defendant's due process rights. *Id.*

1. Filing compulsory counterclaims is not a voluntary appearance.

After Coleman filed his complaint, Street Search filed a Notice of Special Appearance to contest personal jurisdiction in accordance with I.R.C.P. 4(i) on September 27, 2010. Street Search then filed a motion to dismiss for lack of personal jurisdiction under I.R.C.P. 13(b)(2) on October 12, 2010. The district court denied this motion, and issued its Memorandum Decision on December 17, 2010. Two months later, Street Search filed an answer and counterclaims. Street Search properly and timely objected to personal jurisdiction in this case, the only question is whether the counterclaims filed with its answer constitute a waiver of jurisdiction.

Street Search contends that its filing of counterclaims did not constitute a voluntary appearance because the counterclaims were compulsory. In support of this argument, Street Search points to *Nelson v. World Wide Lease, Inc.*, 110 Idaho 369, 716 P.2d 513 (Ct. App. 1986), where the Idaho Court of Appeals held that the respondent did not waive its jurisdictional objection by filing a compulsory counterclaim.

The holding in *Nelson* comports both with Rule 4(i) and the prevailing view among other jurisdictions. *See Hillis v. Heineman*, 626 F.3d 1014, 1018 (9th Cir. 2010); 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1397 (3d ed. 2004) ("[T]he trend

5

in more recent cases is to hold that no Rule 12(b) defense is waived by the assertion of a counterclaim, whether permissive or compulsory....The same result has been reached by several courts with regard to the effect of interposing cross-claims (Rule 13(g)) and third-party claims (Rul2 14). This approach seems sound."). Under Rule 4(i), "[i]f, after a motion under Rule 12(b)(2), (4), or (5) is denied, the party pleads further and defends the action, such further appearance and defense of the action will not constitute a voluntary appearance under this rule." I.R.C.P. 4(i)(2). Filing a compulsory counterclaim is exactly the type of further pleading to which this rule refers.

A counterclaim is compulsory "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." I.R.C.P. 13(a). Coleman's initial complaint sought a declaratory judgment stating that he did not have a contract with either Podesta or Street Search and that neither Podesta nor Street Search had any ownership interests in Dollars and Sense or Profits Plus. Street Search's counterclaims arose out of the same business transactions as Coleman's claims and in fact sought to establish a breach of the alleged contract that Coleman sought to have declared nonexistent. Therefore, Street Search's counterclaims were compulsory. Because Street Search comported with the requirements of Rule 4(i), Street Search did not waive its jurisdictional challenge.

2. Idaho's long-arm statute provides jurisdiction.

The district court held that its exercise of personal jurisdiction over Podesta and Street Search was proper under Idaho's long-arm statute, which provides for the exercise of jurisdiction over claims arising out of the "transaction of any business within this state." I.C. § 5-514(a). Transacting business is defined as "the doing of any act for the purpose of realizing pecuniary benefit or accomplishing or attempting to accomplish, transact or enhance the business purpose or objective or any part thereof of such person, firm, company, association or corporation." I.C. § 5-514(a). This Court has held that I.C. § 5-514 should be liberally construed. *Purco Fleet Servs., Inc., v. Idaho State Dep't of Fin.,* 140 Idaho 121, 124, 90 P.3d 346, 349 (2004). "However, the exercise of personal jurisdiction by the courts of this state over those who do any of the acts enumerated in I.C. § 5-514 extends only as to any cause of action arising from the doing of any of said acts." *Knutsen*, 142 Idaho at 151, 124 P.3d at 1027 (internal quotation marks omitted).

6

Here, the district court determined that it had jurisdiction because Podesta transacted business in Idaho when he visited Idaho to view facilities that would be used to store precious metals owned by Dollars and Sense. Street Search argues that jurisdiction was improper because none of the entities involved in this case are Idaho entities and Coleman provided no facts connecting the alleged independent contractor agreement to Idaho. Further, Street Search claims that merely maintaining an office or storing precious metals in depositories fall under activities that are expressly identified in I.C. § 53-2-903 as not constituting the transaction of business in Idaho.

First, I.C. § 53-2-903 expressly states that it does not "apply in determining the contacts or activities that may subject a foreign limited partnership to service of process, taxation, or regulation under any other law of this state." Thus, Street Search's argument that this section somehow proves that jurisdiction was improper is without merit.

Turning to whether Street Search transacted business in Idaho, the district court correctly denied its motion to dismiss. To determine whether Street Search transacted business in Idaho within the meaning of I.C. § 5-514(a) we look to the facts asserted in Coleman's affidavits in opposition to the motion to dismiss along with Podesta's affidavit in support of this motion. Additionally, we construe these facts in favor of Coleman, the party opposing dismissal. *Knutsen*, 142 Idaho at 150, 124 P.3d at 1026. The following facts are important to our analysis:

(1) Coleman is an Idaho resident and the sole member and manager of Profits Plus, a Delaware limited liability company. Profits Plus is a registered investment advisor with the Idaho Department of Finance.

(2) Profits Plus is the sole general partner of Dollars and Sense, a limited partnership organized in Delaware that purchases, sells, and stores precious metals.

(3) The principal place of business of Dollars and Sense is Idaho, where its only physical activity takes place – the storage of precious metals.

(4) Podesta is a resident of New Jersey and the sole member and manager of Street Search, a New Jersey limited liability company.

(5) Coleman contacted Podesta in May 2008 about raising investors for Dollars and Sense. From May 2008 until early 2010 Podesta and Coleman were in a business relationship, the exact nature of which is in dispute in this case.

(6) Podesta travelled to Idaho on one occasion, which he asserts was in his capacity as President and CEO of Dollars and Sense. On this trip Podesta inspected two potential vault sites for the storage of precious metals, met with

7

Corky Gowans, the owner and potential landlord of the properties, inspected Dollars and Sense's current vault site, and communicated with potential investors.

(7) Podesta and Street Search asserted a fifty percent ownership interest in Dollars and Sense with Podesta also claiming to be the President and CEO of Dollars and Sense.

(8) In addition to the communications Podesta had with Coleman, Podesta initiated business communications with individuals in Idaho on behalf of Dollars and Sense. These communications include December 2009 communications with Nick Barber at the Idaho Banking Company regarding the purchase of property for a potential vault site and continuing communications with Corky Gowans after his trip to Idaho regarding the purchase of property for Dollars and Sense.

Here, both Street Search and Podesta engaged in business in Idaho. Podesta, operating as Street Search, entered into a business relationship with Coleman. According to Podesta, the nature of this relationship was a partnership in which he became President, CEO, and fifty percent owner of Dollars and Sense in exchange for his services in marketing Dollars and Sense. While Dollars and Sense is organized in Delaware, its principal place of business is in Idaho. Street Search claims that the fact that Dollars and Sense's principal place of business is in Idaho is of no significance, citing this Court's opinion in *Houghland Farms, Inc. v. Johnson*, 119 Idaho 72, 803 P.2d 978 (1990). Street Search is taking this Court's language in *Houghland Farms* out of context.

In *Houghland Farms*, this Court held that it did not have personal jurisdiction over a Utah loan broker in a breach of contract case. 119 Idaho 72, 803 P.2d 978 (1990). The broker in *Houghland* prepared a loan proposal for Houghland Farms, Inc. (HFI), whose principal place of business was Idaho. While the broker visited both HFI's properties in Idaho and Arizona, the loan proposal he prepared, which was the basis of the lawsuit, only sought to secure the loan with assets in Arizona. *Id.* at 82, 803 P.2d at 988. Thus, the fact that HFI's principal place of business was Idaho was indeed irrelevant to that case. The same is not true in this case. Street Search asserted a fifty percent ownership interest in a company whose only physical activity is storage of precious metals, which takes place entirely in Idaho. While not sufficient on its own to establish jurisdiction, Podesta also travelled to Idaho, in his capacity as CEO and President of Dollars and Sense, where he inspected Dollars and Sense's vault, visited other potential vault sites, and spoke with Idaho residents concerning the purchase of property in Idaho on behalf of Dollars and Sense. He had both email and phone conversations with Idaho residents on behalf of

8

Dollars and Sense. Taken together, these activities amount to the transaction of business in Idaho as defined in I.C. § 5-514(a).

The next question is whether the claims for relief asserted in this case against Podesta and Street Search arise from that business. The main contention in this case is whether Street Search has an ownership interest in Dollars and Sense. Street Search points out that any alleged agreement and associated negotiations did not occur in Idaho. However, this case arises out of a claimed ownership interest in a company whose principal place of business is Idaho and the alleged consideration for that ownership interest are the very services Podesta performed that constitute the transaction of business in Idaho. Therefore, Idaho's long arm statute provided the district court with jurisdiction.

3. The district court's exercise of jurisdiction does not violate due process.

Next, Street Search contends that its contacts with Idaho were insufficient under the Due Process Clause of the U.S. Constitution to permit personal jurisdiction in this case. The Fourteenth Amendment to the U.S. Constitution permits a state to exercise personal jurisdiction over a non-resident defendant when that defendant has certain minimum contacts with the state such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). In determining the existence of minimum contacts, a court must focus on the relationship among the defendant, the forum, and the litigation. *Shaffer v. Heitner,* 433 U.S. 186, 204 (1977). "The minimum contacts required by *International Shoe* are supplied if the defendant purposefully directs his activities at residents of the forum state and the litigation arises out of or relates to those activities." *Saint Alphonsus Reg'l Med. Ctr. v. Washington*, 123 Idaho 739, 744, 852 P.2d 491, 496 (1993) (internal quotation marks omitted). Once a court finds the requisite minimum contacts, it must then proceed to determine whether its assertion of personal jurisdiction comports with traditional notions of fair play and substantial justice. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476 (1985).

This case involves a contract dispute; however, a contract between a resident of the forum state and a non-resident does not automatically establish purposeful availment. *Id.* at 478. Rather, prior negotiations, contemplated future consequences, the terms of the contract, and the parties' actual course of dealing must be evaluated in determining whether the defendant purposefully established minimum contacts with the forum. *Id.* at 479. Thus, where a party

9

reaches out beyond one state and creates "continuing relationships and obligations with citizens of another state," that party is subject to regulation and sanctions in the other state for the consequences of their activities. *Id.* at 473 (quoting *Travelers Health Ass'n v. Virginia,* 339 U.S. 643, 647 (1950)). Here, Street Search entered into a business relationship with Coleman, a resident of Idaho, that lasted for over a year. The business relationship was based on an agreement, which Street Search contends involved an exchange of its services for an ownership interest in Coleman's limited partnership, whose principal place of business was in Idaho. The services Podesta provided included multiple communications with Idaho residents along with one visit to Idaho in furtherance of the partnership's business objectives. Therefore, the dispute in this case arose out of the claimed existence of "a contract which had substantial connection with [Idaho]." *McGee v. Int'l Life Ins. Co.,* 355 U.S. 220, 223 (1957). As the district court correctly held:

> Had the relationship continued, and if, as alleged, Podesta is indeed a 50% owner of Dollars and Sense, he would, and will, of necessity have ongoing contact with Idaho. If he was to be President and CEO of the fund, he is certainly purposefully availing himself of the privilege of conducting activities in the forum where the only tangible assets and activities of the fund are located.

Accordingly, we hold that both Podesta and Street Search have purposefully availed themselves of the privilege of conducting activities within Idaho.

After a court determines that the requisite minimum contacts with the forum state exist, the next step of the due process analysis requires the court to consider those contacts in light of other factors to determine whether the assertion of personal jurisdiction would comport with "traditional notions of fair play and substantial justice." *Smalley v. Kaiser*, 130 Idaho 909, 913, 950 P.2d 1248, 1252 (1997). Under this analysis the court may consider:

> [1] the burden on the defendant,

> [2] the forum State's interest in adjudicating the dispute,

> [3] the plaintiff's interest in obtaining convenient and effective relief,

> [4] the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and

> [5] the shared interest of the several States in furthering fundamental substantive social policies.

*Id.* (quoting *W. States Equip. Co. v. Am. Amex Inc.,* 125 Idaho 155, 158–59, 868 P.2d 483, 486–87 (1994)) (internal quotation marks omitted). Where "a defendant who purposefully has

directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477.

Street Search argues that the exercise of jurisdiction over it is unreasonable because it will be a financial burden for it to defend the case in Idaho, Idaho has no interest in a case involving only Delaware and New Jersey companies, and the most efficient resolution of this dispute would be where the companies are located.

Street Search has claimed ownership of a business owned by an Idaho resident with its principal place of business in Idaho. Podesta claims entitlement to the office of President and CEO of that business. Podesta and Street Search's "conduct and connection" with Idaho are such that they "should reasonably anticipate being haled into court [here]." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980).

In sum, neither the Idaho long-arm statute nor the Due Process Clause preclude the district court from exercising personal jurisdiction over Podesta and Street Search and entering a binding judgment against them in this case. Therefore, the district court did not err in denying their motion to dismiss.

## B. The district court did not abuse its discretion in denying Street Search's motion for a new trial.

Street Search argues that it is entitled to a new trial according to I.R.C.P. 60(b)(3) and (6) because Coleman purposefully withheld relevant evidence requested through discovery and then lied about it during trial. The discovery request at issue reads:

> Please provide a copy of each and every document relating to the issuance of any professional broker and/or securities licenses to Robert Coleman or Profits Plus the revocation and/or suspension of any such licenses and the reinstatement if applicable of any such licenses.

In response to this request, Coleman produced his Financial Industry Regulatory Authority ("FINRA") Report from the Idaho Department of Finance ("IDOF").[1] Believing that an IDOF witness at trial had reviewed documents that Coleman had not produced during discovery, Street Search made a public records request with IDOF. In response to this request, Street Search received copies of emails Coleman had sent to IDOF requesting a copy of his

---

[1] Specifically, Coleman provided his FINRA Snapshot Report, which includes additional details on disciplinary actions not generally available to the public through a public records request. A FINRA Broker Check Report is available through a public records request. Thus, Coleman argues that a FINRA Snapshot Report is more inclusive than a FINRA Broker Check Report, which was all Podesta provided in response to a similar discovery request.

11

entire file and asking who had access to his file. Coleman then apparently withdrew this request. Street Search alleges that this correspondence was responsive to his discovery request as was information contained in Coleman's IDOF file. Further, Street Search claims that by verifying that he had provided all documents responsive to Street Search's discovery requests, Coleman knowingly made a false statement.

The district court considered Street Search's arguments and ruled from the bench that the issue was more properly framed as a discovery dispute. Although the court stated that it likely would have compelled production had Street Search come to the court before trial and articulated that Coleman's correspondence with IDOF was responsive and not provided, the court also criticized the broad nature of the discovery request at issue. Specifically, the court noted that "it's not the kind of request that I would order sanctions for failing to produce it," reasoning that given the broad nature of the request, there was an argument to be made both for an order compelling Coleman to respond and for a finding that the information complained of was beyond the scope of the written request.

### 1. Standard of Review

The decision to grant or deny relief pursuant to Rule 60(b) is reviewed under an abuse of discretion standard. *Maynard v. Nguyen*, 152 Idaho 724, 726, 274 P.3d 589, 591 (2011).

> The decision will be upheld if it appears that the trial court (1) correctly perceived the issue as discretionary, (2) acted within the boundaries of its discretion and consistent with the applicable legal standards, and (3) reached its determination through an exercise of reason. A determination under Rule 60(b) turns largely on questions of fact to be determined by the trial court. Those factual findings will be upheld unless they are clearly erroneous. If the trial court applies the facts in a logical manner to the criteria set forth in Rule 60(b), while keeping in mind the policy favoring relief in doubtful cases, the court will be deemed to have acted within its discretion.

*Id.*

### 2. Motion for New Trial under Rule 60(b)(3)

Idaho Rule of Civil Procedure 60(b)(3) provides that a court may relieve a party from a final judgment if there was "fraud, (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party." Street Search has the burden of proving each element of fraud by clear and convincing evidence. *Kuhn v. Coldwell Banker Landmark, Inc.*, 150 Idaho 240, 250, 245 P.3d 992, 1002 (2010). Furthermore, "[f]or the purposes of subdivision (3) of the rule, fraud will be found only in the presence of such

12

tampering with the administration of justice as to suggest a wrong against the institutions set up to protect and safeguard the public." *Suitts v. Nix*, 141 Idaho 706, 709, 117 P.3d 120, 123 (2005) (quoting *Win of Mich., Inc. v. Yreka United, Inc.,* 137 Idaho 747, 754, 53 P.3d 330, 337 (2002)).

Street Search claims that Coleman committed fraud by verifying that he had provided all documents responsive to Street Search's discovery requests when he knowingly withheld portions of his IDOF file. Even if Coleman's statement was false, it does not constitute such tampering with the administration of justice as to suggest a wrong against the institutions set up to protect and safeguard the public. *See Suitts*, 141 Idaho at, 709, 117 P.3d at 123.

Therefore, we hold that the district court did not abuse its discretion in denying Street Search's motion for new trial based on Rule 60(b)(3).

3. Motion for New Trial under Rule 60(b)(6)

Next, Street Search argues that Coleman's purposeful withholding of relevant evidence requested through discovery constitutes unique and compelling circumstances that warrant a new trial under Rule 60(b)(6). Street Search argues that because the district court would have granted a motion to compel if it was brought before trial, the subsequent denial of its new trial motion is contrary to I.R.C.P. 26(e). Street Search also asks this Court to look to a Montana Supreme Court case that reversed a denial of a new trial motion due to discovery abuses.

Rule 60(b)(6) provides that the court may grant relief from a judgment for "any other reason justifying relief from the operation of the judgment." Relief can be granted under subsection six "only on a showing of 'unique and compelling circumstances' justifying relief." *Miller v. Haller*, 129 Idaho 345, 349, 924 P.2d 607, 611 (1996). Street Search does not explain how the alleged discovery abuses amount to unique and compelling circumstances, but simply argues that anything less than granting a new trial in his case would condone such abuses.

This Court has infrequently granted relief under Rule 60(b)(6). *Berg v. Kendall*, 147 Idaho 571, 578, 212 P.3d 1001, 1008 (2009). We have recognized that relief under Rule 60(b)(6) may be appropriate where the district court granted relief that is inconsistent with the pleadings and evidence in the case or is beyond what was sought in the complaint. *Dawson v. Cheyovich Family Trust*, 149 Idaho 375, 380–81, 234 P.3d 699, 704–05 (2010). This Court has also found that the complete absence of meaningful representation in a post-conviction proceeding may be "unique and compelling circumstances" warranting relief under I.R.C.P. 60(b)(6). *Eby v. State*, 148 Idaho 731, 737, 228 P.3d 998, 1004 (2010). Additionally, this Court has affirmed the grant

13

of relief where defense counsel's representations to an unrepresented plaintiff constituted overreaching. *Hopkins v. Troutner,* 134 Idaho 445, 447–48, 4 P.3d 557, 559–60 (2000). Street Search does not point to any of these cases for authority, but rather asks this Court to follow the Montana Supreme Court's decision in *Richardson v. State*, 130 P.3d 634, 648 (Mont. 2006).

In *Richardson,* the court held that default judgment was an appropriate sanction because the State's "willful and bad faith conduct" amounted to a "blatant and systemic" abuse of the discovery process, which "undermined the integrity of the entire proceeding." *Id.* at 648–49. The State had knowingly "concealed the evidence ... until the eve of trial by asserting baseless objections" to plaintiff's discovery requests, and the evidence was highly relevant and probative. *Id.* at 640. The court also noted that the State further compounded its initial impropriety by using the lack of knowledge its discovery abuses created against the plaintiff. *Id.* The court justified default judgment as a sanction in part on Montana's strict policy of non-leniency toward discovery abuse and its rule "that punishment for discovery abuses must be made unbearable in order to thwart the inevitable temptation which zealous advocacy inspires." *Id.* at 648.

Street Search has not alleged any discovery abuses that rise to the level of abuse present in *Richardson*. Indeed, while the district court stated it would have likely granted a motion to compel if one had been brought before trial, it also stated that it would not have ordered sanctions. The district court also criticized the overly broad nature of the discovery request, noting that arguments could be made that the withheld documents did not fall within the request.

Upon review, the district court recognized this issue as one of discretion, ruled within the outer boundaries of its discretion, using applicable legal standards, and with the exercise of reason. Therefore, the decision to deny Street Search's new trial motion was not an abuse of discretion.

## C. The district court did not abuse its discretion in excluding evidence under I.R.E. 408 as settlement negotiations.

Street Search argues that the district court abused its discretion in excluding evidence of email communications between Podesta and Coleman as settlement negotiations when the emails were really an attempt on Coleman's part to modify their existing contract. Street Search argues that I.R.E. 408 should only apply where parties are concluding their relationships and not when parties are negotiating terms for a continuing relationship.

The email communications at issue here began on March 2, 2010, with Coleman writing to Podesta expressing his displeasure in Podesta's performance at raising capital and stating that they needed to talk. Podesta responded that same day at 6:23 p.m. as follows:

> Call me in the morning. Read sentence # 4. Illegal, Illegal, illegal. And then some. Remember it is "we" not "I". You are 50% and I am 50%. That is the agreement NOT an arrangement. Stealing MY portion of the fees for your personal use is against the law. I am your partner not a hired worker.

Coleman then responded the next day, stating that he was not stealing anything and their agreement had nothing to do with ownership of the fund. He also proposed a new agreement "terminating our current relationship," which "calculated the management fee owed to you." This proposed agreement is what Street Search refers to as "Exhibit E" in its brief and what the district court excluded in granting Coleman's motion in limine.

Coleman filed a motion in limine to exclude this email chain between himself and Podesta before trial on the grounds that they constituted settlement negotiations. The district court ruled on this motion from the bench holding that the emails following Podesta's initial response are attempts to settle a dispute and so constitute settlement negotiations. Specifically, the court found that Podesta's March 2nd email sent at 6:23 p.m. was not yet settlement negotiations, but signaled the start of a dispute. The court ruled that what followed after that email "appears to be discussions of how we are going to resolve this dispute." As to the new contract Coleman proposed and attached to his March 3rd email, the court concluded that "[Coleman's] offer of, 'Here is a new contract, sign it,' is just that. It's an offer that's rejected and it's—therefore would not be admissible."

1. Standard of Review

The trial court has wide discretion when ruling on a motion in limine. *Gunter v. Murphy's Lounge, LLC*, 141 Idaho 16, 25, 105 P.3d 676, 685 (2005). "This Court reviews the trial court's decision to grant or deny a motion in limine under an abuse of discretion standard." *Id.* Under that standard, "this Court considers whether the district court's exercise of discretion was within the bounds of its authority, consistent with legal standards, and based on an exercise of reason." *Sun Valley Potato Growers, Inc. v. Texas Refinery Corp.*, 139 Idaho 761, 767, 86 P.3d 475, 481 (2004). An incorrect ruling only warrants a new trial if the error affected a substantial right of a party. *Morris v. Thomson*, 130 Idaho 138, 144, 937 P.2d 1212, 1218 (1997) (citing I.R.C.P. 61 and I.R.E. 103).

2. Coleman's proposed new agreement constitutes a settlement offer.

A settlement offer or agreement may not be admitted into evidence to prove liability. I.R.E. 408. The rule does not require exclusion, however, "if the evidence is offered for another purpose, such as proving bias or prejudice of a witness." I.R.E. 408. This Court has noted that Rule 408 is grounded upon two theories: "(1) that the offer is of dubious relevance on the issue of liability since it may merely imply a desire for peace and not a concession of wrong-doing and (2) the policy of promoting settling of disputes would be discouraged if offers of compromise were admitted in evidence." *Rojas v. Lindsay Mfg. Co.*, 108 Idaho 590, 592, 701 P.2d 210, 212 (1985). Accordingly, this Court has also held that Rule 408 "should be given a broad, not narrow, interpretation in order to encourage settlement negotiations." *Saint Alphonsus Diversified Care, Inc. v. MRI Assocs., LLP*, 148 Idaho 479, 495, 224 P.3d 1068, 1084 (2009).

Here, Street Search does not argue that it offered Exhibit E to show bias or prejudice, but rather to show that a contract existed, which Coleman was attempting to change. Thus, it sought to use the exhibit to prove liability. The question then is whether Exhibit E is an offer to settle. Street Search argues that Coleman's offer of a new agreement cannot constitute a settlement negotiation because Coleman and Podesta were not yet concluding their relationship. This is not the standard applied; rather the standard is whether a dispute has arisen as to the validity or amount of a claim. *See* I.R.E. 408.

Both the timing of the offer and the existence of a disputed claim are relevant to the determination of whether an offer is made "in compromising or attempting to compromise a claim" so that the offer would be subject to exclusion under Rule 408. I.R.E. 408; *See Cassino v. Reichhold Chemicals,* 817 F.2d 1338, 1342–43 (9th Cir. 1987). In interpreting F.R.E. 408, the rule on which I.R.E. 408 is based, courts have generally held that a dispute need not "crystallize to the point of threatened litigation" for exclusion under Rule 408 to apply. *Weems v. Tyson Foods, Inc.*, 665 F.3d 958, 965 (8th Cir. 2011) (quoting *Affiliated Mfrs. v. Aluminum Co. of Am.*, 56 F.3d 521, 527 (3d Cir. 1995)); *accord Dallis v. Aetna Life Ins. Co.,* 768 F.2d 1303, 1307 (11th Cir. 1985). "A dispute exists for Rule 408 purposes so long as there is 'an actual dispute or difference of opinion' regarding a party's liability for or the amount of the claim." *Weems*, 665 F.3d at 965 (quoting *Affiliated Mfrs.,* 56 F.3d at 527). Thus, an offer of a severance pay package in exchange for a release of all potential claims contemporaneous with the termination is

admissible because it is made before any dispute has arisen; it is merely an attempt to secure a release of *potential* claims. *Cassino,* 817 F.2d at 1343.

In ruling on Coleman's motion in limine, the district court held that Podesta's email claiming that he was a fifty percent owner of Dollars and Sense and that Coleman was breaking the law marked the commencement of a dispute. This is an accurate assessment as two disputes arose—one as to the amount owed to Podesta, and the other as to whether Podesta had any ownership interest in the company. Furthermore, Podesta's statements of "Illegal, Illegal, illegal" and "Stealing MY portion of the fees for your personal use is against the law" are essentially a threat of litigation. Given these statements threatening litigation and his assertion of an ownership interest in Dollars and Sense, Coleman's response and his proposed agreement are an attempt to settle their disputes. This conclusion is also in line with the directive that Rule 408 "should be given a broad, not narrow, interpretation in order to encourage settlement negotiations." *Saint Alphonsus*, 148 Idaho at 495, 224 P.3d at 1084.

Street Search next argues that Coleman's proposed contract does not fall under Rule 408's exclusion because Coleman does not offer any consideration. Coleman's proposed contract terminated any previous agreements, required Podesta to disavow any ownership interest in Dollars and Sense, and agreed to pay Podesta "the remainder portion of management fees owed." While the fees contemplated appear to be only an offer to pay Podesta what he is already owed, the agreement provides other valid consideration like requiring Profits Plus to obtain written consent before it can use Street Search in any sales brochures. Moreover, Coleman makes clear in the accompanying email that signing the proposed agreement will allow them to move forward and continue working together, which could also constitute consideration. *See Weisel v. Beaver Springs Owners Ass'n, Inc.*, 152 Idaho 519, 526, 272 P.3d 491, 498 (2012) ("Consideration 'must have some value in the eyes of the law; but in the absence of fraud or overreaching, the promisor, if competent, can fix on anything not in itself unlawful as a consideration and put his own value on it, and whether it is equivalent' to the benefit bargained for is a matter left to the determination of the parties.").

The conditions concerning the use of the Street Search name coupled with the offer to continue the business relationship is sufficient consideration. Therefore, we hold that the district court did not abuse its discretion in finding Coleman's proposed contract to be a settlement offer inadmissible under IRE 408.

17

**D. Street Search has not shown error in the district court's failure to instruct the jury on fraud and constructive fraud.**

There is no record that Street Search ever proposed a jury instruction on fraud or constructive fraud. However, Coleman proposed an instruction on fraud and constructive fraud in his first proposed jury instructions, which were filed on January 18, 2012. Street Search then filed his objections and non-objections to Coleman's proposed instructions as well as a proposal of additional instructions. Street Search did not object to Coleman's instructions on fraud and constructive fraud nor did it propose any further instructions on these causes of action. On January 30, 2012, Coleman filed proposed amended and supplemental jury instructions. Because these proposed amended instructions are not in the record, we do not know whether they included instructions on fraud or constructive fraud. Street Search then filed two supplemental proposed jury instructions, the second of which is in the record on appeal and does not include instructions on fraud or constructive fraud.

Street Search concedes that it never proposed instructions on either fraud or constructive fraud, but contends that any failure on its part was due to the district court telling the parties in a jury instruction conference that it was refusing to give fraud and constructive fraud instructions. A transcript from this conference or when exactly this conference took place is not in the record and no attempt to make a record of this conference was made until approximately fifteen months later.[2]

Following the close of the evidence at trial, the district court provided the parties with the final jury instructions and an opportunity to voice objections. While Coleman objected to the court's refusal to give the instruction on his affirmative defense of fraud, Street Search made no objections to the lack of instructions on fraud and constructive fraud. In response to Coleman's objection, the district court explained that there was insufficient evidence to present the jury with

---

[2] Almost fifteen months after the parties first proposed jury instructions and six months after the filing of the second amended final judgment, Street Search filed a motion to augment the record regarding what it deemed was a dismissal of its fraud and constructive fraud claims. Specifically, Street Search sought a written order memorializing what transpired in the jury instruction conference with regard to its fraud and constructive fraud claims. A hearing on this motion was held on April 10, 2013. At that hearing, the district court stated, "It wasn't a dismissal. It was an 'I'm not instructing on them,' as I recall." The district court denied Street Search's Motion for a Written Order of Dismissal as untimely under Idaho Appellate Rule 29. Street Search does not appeal this ruling. The court did allow Street Search to augment the record to include its second supplemental proposed jury instructions noting that these instructions were provided to and considered by the court and the only reason they were not filed with the Clerk's office was due to the court's oversight. Neither these supplemental instructions, nor any of the previously filed instructions, include a proposal on Street Search's part of a fraud or constructive fraud instruction.

an affirmative claim of fraud on Coleman's part. When asked if it had any objections to the court's jury instructions, Street Search's counsel stated that he "would have preferred that the court give us the promissory estoppel instruction," but "other than that, we're happy."

Street Search acknowledges its failure to object to what it deems was a dismissal of its fraud and constructive fraud claims arguing that this dismissal was plain error. As to its failure to propose jury instructions on either fraud or constructive fraud, Street Search argues that "[i]t would be nonsensical to require a party to offer jury instructions and object to the refusal to give jury instructions related to a dismissed claim." Street Search contends that a ruling that the evidence does not support an element jury instruction is essentially a directed verdict and that I.R.C.P. 51(b) is unconstitutional when applied to assert that a trial court possesses authority to weigh evidence and subsequently dismiss a claim by refusing to give a jury instruction.

Idaho Rule of Civil Procedure 51(a) requires a trial court to rule on requested jury instructions at the close of the evidence at trial, either "verbally indicat[ing] its ruling on the record" or by indorsing "upon the duplicated copy of each requested instruction the court's ruling as to such request." Section (b) of this rule further requires a party to object on the record to the failure to give a requested jury instructing stating, "No party may assign as error the giving of or failure to give an instruction unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the instruction to which that party objects and the grounds of the objection." I.R.C.P. 51(b). Thus, we will not consider challenges to a jury instruction on appeal that were not objected to below. *Lakeland True Value Hardware, LLC v. Hartford Fire Ins. Co.*, 153 Idaho 716, 725, 291 P.3d 399, 408 (2012).

Street Search contends that the district court violated I.R.C.P. 51(a) by failing to make a record of its refusal to instruct the jury on its fraud and constructive fraud claims. However, because the record on appeal does not include Coleman's amended proposed jury instructions, it is not clear whether fraud and constructive fraud instructions were before the court when it ultimately ruled on the final jury instructions. Moreover, Street Search concedes it never proposed instructions on fraud and constructive fraud, arguing that this failure to propose instructions was due to the district court's dismissal of these claims in a jury instruction conference.

The trial transcript does not include the jury instruction conference between the court and counsel. No party asked that the conference be reported. Consequently, we do not know whether

19

the instruction in question actually was requested at the conference; nor do we know whether a ruling was obtained. "It is the litigant's duty to not only clearly state its contentions to the trial judge, but to make such contentions, and the rulings thereon, of record so they may be reviewed on appeal." *Van Velson Corp. v. Westwood Mall Assocs.*, 126 Idaho 401, 406, 884 P.2d 414, 419 (1994). Therefore, if the claims were indeed dismissed, it was incumbent upon Street Search's counsel to object to the dismissal and to request that the court record the objection or direct the reporter to record what had transpired. *Annau v. Schutte*, 96 Idaho 704, 710, 535 P.2d 1095, 1101 (1975). This Court "will not review a trial court's alleged error on appeal unless the record discloses an adverse ruling which forms the basis for the assignment of error." *State v. Fisher*, 123 Idaho 481, 485, 849 P.2d 942, 946 (1993). Under these circumstances, any questions relating to the failure to instruct on fraud or constructive fraud have not been preserved adequately for appellate review. Accordingly, we need not address Street Search's argument that the failure to instruct on fraud or constructive fraud essentially amounted to a directed verdict.

**E. The district court did not abuse its discretion in refusing to instruct the jury on promissory estoppel.**

Street Search next argues that the district court abused its discretion in refusing to give its instruction regarding promissory estoppel. Street Search argues that the proposed instruction was a correct statement of the law, not adequately covered by other instructions, and supported by the facts of the case. Coleman responds that the district court did not abuse its discretion in refusing to give the instruction because the existence of a definite agreement was at issue, not consideration.

The district court gave the following explanation for declining to give the promissory estoppel instruction:

> I considered the request to give an instruction on promissory estoppel. I did not believe it would be appropriate in this case. It would do nothing more than confuse the jury. I think the issues are well laid out for them, and the issue of consideration in this case I don't believe is going to revolve on promissory estoppel. In any event, that request I will deem as being -- well, it's overruled.

If a party's theory of the case is supported by any reasonable view of the evidence, the party is entitled to a jury instruction on that theory. *Vanford Co., Inc. v. Knudson*, 144 Idaho 547, 555, 165 P.3d 261, 269 (2007). The determination of whether the instruction is supported by the facts is committed to the discretion of the district court. *Craig Johnson Const., LLC v. Floyd Town Architects, PA*, 142 Idaho 797, 800, 134 P.3d 648, 651 (2006).

20

This Court has described promissory estoppel as: "A promise which the promisor should reasonably expect to induce action or forebearance on the part of a promisee or a third person and which does induce such action or forebearance is binding if injustice can be avoided only by enforcement of the promise." *Smith v. Boise Kenworth Sales, Inc.,* 102 Idaho 63, 67, 625 P.2d 417, 421 (1981) (quoting Restatement (Second) of Contracts § 901(1) (1973)). The elements required to support such a claim are: "(1) one party's reliance on a promise creates a substantial economic detriment, (2) the reliance was or should have been foreseeable, and (3) the reliance was reasonable and justified." *Grover v. Wadsworth,* 147 Idaho 60, 64, 205 P.3d 1196, 1200 (2009). "Promissory estoppel is simply a substitute for consideration, not a substitute for an agreement between parties." *Lettunich v. Key Bank Nat. Ass'n*, 141 Idaho 362, 367, 109 P.3d 1104, 1109 (2005). Thus, where there is evidence of adequate consideration, the doctrine of promissory estoppel is of no consequence. *Id.* at 368, 109 P.3d at 1110.

Coleman is correct that consideration was not at issue in this case nor does Street Search claim that consideration was at issue. Instead, Street Search focuses on the "promise of ownership" and Podesta's reliance on that promise. The problem with Street Search's promissory estoppel argument is that Street Search was attempting to recover an alleged bargained for consideration through its breach of contract claim. In the facts section of its amended counterclaim Street Search states, "Coleman offered 50% of Profit Plus' ownership in the limited partnership that owned the fund in exchange for Podesta's assistance." Where there is an exchange of mutual promises, there is no lack of consideration. *Zollinger v. Carrol*, 137 Idaho 397, 400, 49 P.3d 402, 405 (2002). Thus, as in *Lettunich*, the issue in this case was not whether there was sufficient consideration, but whether there was sufficient evidence of an agreement.

Because there was clearly consideration in the alleged agreement between Street Search and Coleman, there is no need to apply the doctrine of promissory estoppel. Therefore, the district court did not abuse its discretion in refusing to give a jury instruction on promissory estoppel.

**F. The district court did not abuse its discretion in refusing to allow evidence of tort damages.**

Street Search argues that because the court instructed the jury regarding damages for breach of fiduciary duty, it should have been allowed to present evidence of its claimed tort damages. Specifically, Street Search argues that the court should have allowed it to present exhibits attempting to show Street Search's lost profits. Street Search argues that the refusal to

allow it to present this evidence affected its substantial rights by conveying to the jury that the court did not believe its breach of fiduciary duty claim. Coleman argues that this issue is irrelevant because Street Search was unable to establish a contract between the parties, the existence of which was the only basis for finding a fiduciary duty, a breach thereof, or damages.

At trial, Street Search attempted to present evidence of the valuation of the Dollars and Sense fund on December, 31, 2011, in order to show profits lost due to Coleman's alleged breach. Coleman objected to this evidence arguing that it was not relevant because contract damages are measured at the time of breach and the alleged breach occurred in 2010. The district court sustained the objection, stating:

> [F]rom my memory of the law, we measure contract damages at the time and place of the breach of the contract. I think the Supreme Court said so fairly recently. And I don't know that it would be any different from the breach of fiduciary duty or for fraud or other causes of action alleged.

Street Search is correct that breach of fiduciary duty is a tort claim for which lost profits may constitute damages. *See Rockefeller v. Grabow*, 136 Idaho 637, 646, 39 P.3d 577, 586 (2001). However, Coleman is correct that this argument is irrelevant. Street Search failed to prove liability under any of its claims and it does not appeal from the jury verdict or from the decision on its motion for judgment notwithstanding the verdict. "In order for the issue of damages testimony to be relevant, a party must be able to establish liability." *City of Meridian v. Petra Inc.*, 154 Idaho 425, 454, 299 P.3d 232, 261 (2013). Therefore, Street Search's claim regarding tort damages is not relevant, and we decline to address it on appeal.

**G. Coleman is entitled to attorney fees on appeal.**

Both parties seek an award of attorney fees under I.C. § 12-120(3). Idaho Code Section 12-120(3) provides for attorney fees to the prevailing party in a civil action to recover on "any commercial transaction." Commercial transactions are all transactions except for personal or household purposes. I.C. § 12-120(3). Whether there is a commercial transaction is a question of law over which this Court exercises free review. *Great Plains Equip. v. Nw. Pipeline Corp.,* 136 Idaho 466, 470, 36 P.3d 218, 222 (2001). "Where a party alleges the existence of a contractual relationship of a type embraced by section 12-120(3) ... that claim triggers the application of [I.C. § 12-120(3)] and a prevailing party may recover fees even though no liability under a contract was established." *Farmers Nat'l Bank v. Shirey,* 126 Idaho 63, 73, 878 P.2d 762, 772 (1994).

In this case neither party disputes the applicability of section 12-120(3). Rather, both parties simply ask that they be awarded attorney fees if they are the prevailing party. Coleman has prevailed on every claim raised by Street Search; therefore, he is prevailing party on appeal and entitled to attorney fees pursuant to I.C. § 12-120(3).

## IV. CONCLUSION

We hold that the district court properly exercised jurisdiction over both Podesta and Street Search. Additionally, we hold that the district court did not abuse its discretion in denying Street Search's new trial motion, granting Coleman's motion in limine, or refusing to give a jury instruction on promissory estoppel. Attorney fees and costs to Coleman on appeal.

Justices EISMANN, J. JONES, W. JONES and HORTON, **CONCUR.**